# 98 DTA 129

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE PONCE Y AIBONITO**
**PANEL I**

GOBIERNO MUNICIPAL AUTONOMO DE PONCE
Recurrente

v.

ADMINISTRACION DE REGLAMENTOS Y PERMISOS
Recurrida

Núm. KLRA-97-00219

San Juan, Puerto Rico, a 19 de marzo de 1998

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Gobierno Municipal Autónomo de Ponce, en lo sucesivo el Municipio, nos solicita la revisión de una resolución emitida por la Administración de Reglamentos y Permisos, en adelante A.R.P.E., en el Caso Núm. 96-63-C-506-UPPI, el 11 de febrero de 1997, mediante la cual se aprobó un plano de inscripción parcial y se autorizó la segregación de ciertos solares del proyecto de urbanización *"Cerca del Cielo"*.

El Municipio alega que A.R.P.E. no podía dictar dicha resolución hasta tanto adviniera final y firme la resolución dictada por esa agencia el 28 de enero de 1997 en cuanto a la aprobación del plano de inscripción parcial y corrección de cabida en el caso núm. 78-63-B-196-PPL. █

Por los fundamentos que más adelante expondremos, expedimos el auto solicitado y revocamos la resolución recurrida.

# I

Examinemos el trasfondo fáctico y procesal que dio margen a la presentación de este recurso.

En el año 1977 el Ing. Juan Torres Laó, en adelante el proponente, presentó ante A.R.P.E. una solicitud para el desarrollo y construcción de una urbanizacción denominada *"Cerca del Cielo"*, que estaría ubicada en el Barrio Canas del Municipio de Ponce, P.R. El 14 de julio de 1978, A.R.P.E. emitió una resolución mediante la cual aprobó los planos para la construcción de 62 solares en el referido proyecto y le asignó el núm. 78-63-B-196-PPF.

El 13 de diciembre de 1982, A.R.P.E. emitió una resolución en la que aprobó la segregación e inscripción de una parcela de terreno con una cabida superficial de 6030.65 metros cuadrados que serviría de parque pasivo de la urbanización, consulta núm. 78-63-B-196-PPL. El 24 de abril de 1989 se autorizó la primera enmienda al plano de construcción originalmente aprobado el 14 de julio de 1978 para reducir el número de solares del proyecto de sesenta y dos (72) a treinta y dos (32). El 3 de mayo de 1990 se aprobó la segunda enmienda a los planos de construcción mediante la cual se aumentó el número de solares residenciales del proyecto de treinta y dos (32) a cuarenta y cinco (45).

No obstante, por razones que no es necesario reseñar, el proyecto no fue construido durante el período de vigencia otorgado por A.R.P.E.

Mientras el caso estaba en dicha etapa administrativa se aprobó la Ley Núm. 81 del 30 de agosto de 1991, conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. secs. 4001 y ss. El 25 de noviembre de 1992, el Municipio de Ponce, A.R.P.E. y la Junta de Planificación de Puerto Rico suscribieron el *"Convenio de Transferencia de Competencias de la Junta de Planificación y la Administración de Reglamentos y Permisos por el Gobierno Central de Puerto Rico al Municipio de Ponce"*, en lo sucesivo el Convenio, mediante el cual se le transfirieron al Municipio de Ponce ciertas facultades de A.R.P.E. y de la Junta de Planificación.

No es hasta el 1995 que el proponente realiza gestiones para continuar con la tramitación del proyecto de la urbanización *"Cerca del Cielo"*. El 27 de diciembre de 1995 el proponente presentó en la Oficina de Permisos del Municipio de Ponce, en adelante Oficina de Permisos, una carta para que dicha oficina determinara si tenía jurisdicción para evaluar el proyecto en cuestión.

Fundamentándose en las disposiciones de la Ley de Municipios Autónomos, *supra*, y el Convenio, el 6 de febrero de 1996, el Municipio le envió una comunicación a la parte proponente indicándole que la consulta objeto de estudio estaba bajo la jurisdicción del Municipio y no de A.R.P.E. El Municipio señaló en dicha comunicación que *"[l]a consulta que nos ocupa no constituye un proyecto o tipo de obra cuya facultad de consideración esté retenida por las agencias públicas centrales". Más adelante dispuso que "[e]n el caso que nos ocupa ya la Administración de Reglamentos y Permisos emitió una decisión final en la etapa correspondiente a las obras de urbanización autorizando las mismas. Por tal razón las próximas etapas corresponden ser evaluadas por esta oficina".*

Por ello, el 13 de febrero de 1996, el proponente presentó una solicitud de reapertura del caso ante la Oficina de Permisos para proceder a someter los endosos de las agencias concernidas en cuanto a la aceptación de las facilidades y someter conjuntamente el plano de inscripción final.

Así las cosas, el 2 de octubre de 1996 el proponente presentó ante la Oficina de Permisos un plano de inscripción del proyecto y solicitó la segregación parcial de 37 solares del mismo. El Municipio le asignó a dicha solicitud el núm. 506-UPPI. El 14 de octubre de 1996 la parte proponente presentó ante la Oficina de Permisos un memorial explicativo en el cual describió el proyecto en detalle y se solicitó una audiencia para dilucidar la cuestión de la segregación. En la hoja de presentación del referido caso, la Oficina de Permisos hizo constar que existían diferencias entre las obras de urbanización aprobadas por A.R.P.E. y las obras construidas según el Plano de Inscripción presentado ante dicha Oficina. Específicamente, los documentos presentados por el proponente reflejaban un total de cincuenta (50) solares, mientras que A.R.P.E. había aprobado sólo cuarenta y cinco (45) en la última enmienda que se le hizo al proyecto el 3 de mayo de 1990. Debido a ello, el 28 de octubre de 1996 la Oficina de Permisos emitió una *"Notificación de Objeción"* indicándole al proponente que *"[p]revio a la evaluación de la solicitud deberá someter una enmienda a los planos de las obras de urbanización*

*que incorporen los cambios realizados al proyecto en cuestión"*. Por ello, el 20 de noviembre de 1996, la parte proponente sometió ante la Oficina de Permisos una enmienda a los planos de urbanización del proyecto.

El 3 de diciembre de 1996 el Municipio elevó el caso ante A.R.P.E. toda vez que *"la Oficina de ARPE expidió el permiso de construcción"*. El Municipio aclaró en tal comunicación que la elevación del expediente no constituia una evaluación o endoso del Municipio al proyecto en cuestión y le advirtió a la agencia que tenía que cumplir con lo dispuesto en el Artículo 13.012 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4610, a los efectos de que debía evaluar la solicitud de acuerdo al Plan de Ordenación Aplicable y solicitarle los comentarios.

El 15 de enero de 1997 A.R.P.E. aprobó por tercera vez una enmienda al permiso de urbanización expedido el 14 de julio de 1978 y, entre otras cosas, aumentó el número de solares a cincuenta (50) y redujo el área del parque pasivo a 4,490.4451 metros cuadrados. En dicha resolución, A.R.P.E. le indicó a la parte proponente que, previo a la inscripción de los solares del proyecto, tenía que cumplir con ciertos requisitos, incluyendo el que se sometiera la enmienda correspondiente a los planos del parque pasivo en el caso núm. 78-63-196-B-PPL, de manera que se reflejara la reducción en cabida aprobada.

El 21 de enero de 1997 la parte proponente envió una carta a la Oficina de Permisos en la que le solicitó que si le correspondía a A.R.P.E. aprobar la segregación del parque pasivo, elevara el expediente ante dicha agencia lo antes posible. El 22 de enero de 1997 la parte proponente presentó ante A.R.P.E. una solicitud de enmienda al plano de construcción para aumentar el número de solares a cincuenta.

El 28 de enero de 1997 A.R.P.E. emitió la resolución mediante la cual se enmendó la resolución dictada el 13 de diciembre de 1982, en cuanto a la cabida del parque pasivo, se aprobó el plano de inscripción sustituto, y se hizo constar que la cabida correcta de la parcela rotulada como parque pasivo era la indicada en el plano de inscripción aprobado. Dicha resolución fue notificada el 30 de enero del mismo año. El Municipio solicitó reconsideración de dicha decisión el 19 de febrero de 1997, en el caso 78-63-B-196-PPL, alegando que A.R.P.E. tenía que solicitarle los comentarios al Municipio antes de resolver dicha solicitud de conformidad con lo dispuesto en el Artículo 13.012 de la Ley de Municipios Autónomos, *supra*. A.R.P.E. acogió dicha solicitud de reconsideración, pero no la resolvió dentro del término reglamentario dispuesto en la sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2165. Inconforme, el Municipio presentó recurso de revisión ante nos, Caso Núm. KLRA-97-00359, solicitando la revocación de dicha resolución por los mismos fundamentos esbozados en la solicitud de reconsideración.

Así las cosas, el 6 de febrero de 1997 la parte proponente presentó ante A.R.P.E. una solicitud de reconsideración de la resolución emitida por la referida agencia el 15 de enero de 1997 para que se le eximiera de cumplir con uno de los requisitos allí dispuestos y que se otorgase el plano de inscripción final de las treinta y siete (37) parcelas a segregarse. El 11 de febrero de 1997 A.R.P.E. emitió la resolución recurrida mediante la cual aprobó el Plano de Inscripción Parcial y autorizó la segregación de los treinta y siete (37) solares.

El 6 de marzo de 1997 el Municipio presentó reconsideración de dicha resolución, la cual no fue acogida por A.R.P.E. Inconforme con tal dictamen, el Municipio acude ante nos mediante la presentación del recurso de revisión Núm. KLRA-97-00219, en el que alega que:

*"Erró la Administración de Reglamentos y Permisos al dictar la Resolución del 11 de febrero de 1997 en el Caso Núm. 96-63-C-506-UPPI, ya que no podía considerar ni resolver la Solicitud para la Aprobación del Plano de Inscripción Parcial y autorización para la segregación de los solares presentada por la parte proponente en dicho caso, hasta tanto la Resolución dictada el día 28 de enero de 1997, en cuanto a la aprobación del Plano de Inscripción Parcial y corrección de cabida en el Caso Núm. 78-63-B-196-PPL, adviniera final y firme".*

Le concedimos un término a la agencia recurrida para que mostrara causa por la cual no debíamos

revocar la resolución recurrida. A.R.P.E. sostuvo que toda vez que en la consulta de autos no se había emitido una decisión final, la facultad para evaluar todos los incidentes relacionados con el proyecto de la urbanización *"Cerca del Cielo"* le correspondía a dicha agencia. Por tanto, alegó que la parte proponente erró al continuar el trámite del caso ante la Oficina de Permisos. La agencia recurrida solicitó, además, la desestimación del recurso de revisión aduciendo que el Municipio no tenía legitimación para presentar una revisión judicial cuestionando la determinación de A.R.P.E. pues no era una parte, según se establecía en la Ley de Procedimiento Administrativo Uniforme, *supra*. Por último, A.R.P.E. señaló, que este Tribunal carecía de jurisdicción para entender en la presente controversia porque no se agotó el procedimiento de arbitraje establecido en la ley y en el convenio.

Posteriormente, le ordenamos al Municipio que se expresara en torno a la solicitud de A.R.P.E. El Municipio compareció mediante moción en cumplimiento de orden en la que presentó los mismos argumentos que expuso en el Núm. KLRA-97-00359. Señaló que las cuestiones relativas a la consulta del proyecto *"Cerca del Cielo"* no estaban pendientes ante A.R.P.E., ya que dicha agencia había tomado una decisión final en cuanto al permiso concedido a la parte proponente. El Municipio alegó, además, que refirió el expediente a A.R.P.E. durante la evaluación de la solicitud de lotificación presentada por el proponente, a los únicos fines de que la agencia considerara la enmienda a los planos de construcción aprobados previamente por dicha agencia. Adujo, además, que le correspondía a A.R.P.E. solicitarle los comentarios al Municipio previo a la aprobación de la enmienda al plano de inscripción y luego devolverle el asunto al Municipio para que éste continuara evaluando en los méritos la solicitud de lotificación presentada por la parte proponente el 2 de octubre de 1996.

El Municipio expresó que tenía capacidad para solicitar la revisión judicial de la resolución recurrida, ya que de conformidad con lo dispuesto en la Ley de Municipios Autónomos, *supra*, el Plan de Ordenación Territorial y la reglamentación aplicable, estaba facultado para intervenir en los procesos de evaluación de proyectos relacionados con la ordenación del territorio municipal. Por último, en cuanto al arbitraje, el Municipio señaló que era la propia A.R.P.E. quien había rehusado a continuar participando en las reuniones del Comité de Coordinación y el Municipio.

Posteriormente, A.R.P.E. presentó una réplica en la cual reprodujo los argumentos que había esbozado en su solicitud de desestimación.

**II**

Antes de entrar a considerar la discusión del error señalado por el Municipio, pasemos a considerar si procede la desestimación del recurso por las razones invocadas por A.R.P.E.

No cabe duda de que el Municipio tiene un interés legítimo de velar porque toda decisión en cuanto al uso del suelo en su demarcación territorial se haga de conformidad con su Plan de Ordenación Territorial, la reglamentación aplicable y la política pública expuesta en la Ley de Municipios Autónomos, *supra*. En virtud de ello, resulta ineludible concluir que el Municipio tiene capacidad para solicitar la revisión de la resolución objeto de la presente controversia.

El asunto relativo al arbitraje ha sido resuelto en ocasiones anteriores por este panel en los casos Núms. KLRA-97-00523 y KLRA-97-00260, resueltos el 15 de diciembre de 1997 y 30 de enero de 1998, respectivamente. ■ Conviene transcribir literalmente lo que expusimos recientemente en la sentencia que emitiéramos en el caso Núm. KLRA-97-00523:

*"Ni la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, supra, ni el Convenio de Transferencia de Competencias de la Junta de Planificación y la Administración de Reglamentos y Permisos por el Gobierno Central de Puerto Rico al Municipio de Ponce, exigen que el arbitraje sea compulsorio. De hecho, en la ley ni en el convenio existe expresión alguna vedando el acceso a los tribunales hasta que no se agote el remedio de arbitraje."*

Reviste singular importancia, además, que la Legislatura pudo muy bien imponer el arbitraje en la Ley de Municipios Autónomos, *supra*, y optó por no hacerlo. Se limitó a decir que las partes incluyeran en el convenio una cláusula de arbitraje, sin absolutizarla.

Nuestros cuerpos legislativos, sabiamente, crearon un mecanismo flexible que ofrece mayores alternativas a las partes para dirimir sus conflictos, sin imponerles una camisa de fuerza. En otras palabras, la cláusula de arbitraje permite a las partes lo mejor de dos mundos: el arbitral y el judicial.

La Legislatura proveyó a las partes un vehículo dúctil, puesto que en ausencia de la cláusula de arbitraje ninguna de las partes podría obligar a la otra parte renuente a acudir al arbitraje. Sin embargo, la ley y la cláusula de arbitraje del convenio, permiten a ambas partes seleccionar el arbitraje o el vehículo procesal que consideren más expedito para dilucidar sus conflictos, especialmente en casos como el que nos ocupa, donde las partes también funcionan como organismos administrativos adjudicativos. La única diferencia estriba en que de las decisiones de la Junta de Planificación se recurre al Tribunal de Circuito de Apelaciones bajo la Ley de Procedimiento Administrativo Uniforme, según enmendada, Ley Núm. 170 de 12 de agosto de 1988, 32 L.P.R.A. sec. 2201 y ss., mientras que de las decisiones de la Oficina de Permisos del Municipio Autónomo de Ponce, se recurre al Tribunal de Primera Instancia, conforme al Artículo 15.002 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702, según enmendada por la Ley Núm. 67 de 10 de agosto de 1997.

Cabe destacar que durante el trámite administrativo judicial del caso de autos la Junta no ha planteado en ningún momento la cuestión relativa al arbitraje.

La única conclusión lógica que podemos derivar de su conducta es que ha rehuido deliberadamente ese curso de acción porque reconoce la simultaneidad de jurisdicciones y prefirió optar, legítimamente, en este caso, por la vía administrativa y judicial, donde inicialmente tenía el absoluto control sobre el aspecto adjudicativo y decisional de la controversia y la obvia ventaja de la presunción de corrección de sus dictámenes.

No estamos frente a una situación en que una parte intima y urge a la otra parte para que se someta a un procedimiento de arbitraje y la otra parte evade o intenta soslayar sus obligaciones legales y contractuales. Eso nunca ha ocurrido en este caso. Si esa hubiese sido la situación no cabe duda que habría que acudir al arbitraje, si fuere viable. Ahora bien, asumiendo a los únicos fines de la argumentación, que la Junta hubiese notificado al Municipio su intención de arbitrar, ¿era el arbitraje viable? Entendemos que no. Veamos.

En cuanto a este punto, tomamos conocimiento judicial de la información que se nos proveyó en el caso Núm. KLRA-96-00260 y de lo allí resuelto en relación con la carencia de los vehículos procesales para implantar las disposiciones de ley relativas al arbitraje: es decir, el Comité de Coordinación y el procedimiento de mediación ante la Oficina del Comisionado de Asuntos Municipales. Toda vez que la sentencia en el caso Núm. KLRA-96-00260 se emitió el 15 de diciembre de 1997 y las partes no nos han informado que dicha situación ha cambiado, tenemos que concluir que dichos mecanismos aún no se han activado, por lo que, en esta etapa, el procedimiento de arbitraje no resulta viable.

Por ser enteramente aplicable al caso de autos, conviene citar textualmente lo que resolvimos en el caso Núm. KLRA-96-00260, *supra*:

*"El convenio establece tres (3) instancias para el arbitraje. La primera, requiere un Comité de Coordinación, que aunque fue creado originalmente, A.R.P.E. se ha negado a continuar celebrando las reuniones, según ha alegado el Municipio y A.R.P.E. no ha refutado. No hay duda que el Comité de Coordinación fue designado y se reunió en dos ocasiones y que en una de esas reuniones se trajo a colación la problemática que eventualmente se plantea en los méritos de este recurso. Sin embargo, el Municipio Autónomo de Ponce, adujo en la vista que celebramos y en su Moción en Cumplimiento de Orden del 3 de enero de 1997, que: "Durante la vista le informamos al Honorable Tribunal que el Comité de Coordinación no está en funcionamiento porque las reuniones del mismo fueron suspendidas por determinación de la Junta de Planificación y la Administración de Reglamentos y Permisos".*

Independientemente de la razón y las motivaciones para la suspensión de las reuniones, lo cierto es que durante años no se han celebrado y no hay en los autos evidencia alguna que nos permita concluir

que A.R.P.E., o el Municipio, hayan solicitado la reanudación de las mismas con el propósito de discutir las cuestiones planteadas en el presente recurso. Según hemos señalado, A.R.P.E. en todo momento ha soslayado discutir durante el trámite de este asunto, desde sus orígenes en el foro administrativo --dicho sea de paso, ante la propia A.R.P.E.-- la cuestión relativa al procedimiento de arbitraje.

Los autos ante nos reflejan que el Comité de Coordinación se reunió en dos (2) ocasiones, la última de ellas el 7 de marzo de 1993. O sea, el comité no se reúne hace cuatro (4) años y medio. Es pertinente señalar que la resolución de A.R.P.E. objeto del presente recurso fue emitida el 28 de agosto de 1996, es decir, tres (3) años y tres (3) meses después de la última reunión del comité. El recurso ante nuestra consideración fue presentado el 19 de septiembre de 1997, o sea, tres (3) años y cuatro (4) meses después de la última reunión. No se nos ha presentado comunicación alguna de A.R.P.E. dirigida al Municipio Autónomo de Ponce instándolo a reunir el comité para discutir éste o cualquier otro asunto. Tampoco el Municipio ha desplegado esa iniciativa.

La segunda de las etapas, como ya hemos visto, es un procedimiento de mediación y conciliación ante la Oficina del Comisionado de Asuntos Municipales, para el cual es indispensable un reglamento que no ha sido creado. La Oficina del Comisionado de Asuntos Municipales no tiene un reglamento de mediación y conciliación, no empece haber transcurrido más de seis (6) años desde la aprobación de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, 31 L.P.R.A. secciones 4001 et. seq. El Artículo 19.011 de dicha ley, 21 L.P.R.A. sec. 4911, provee que el Comisionado deberá adoptar las reglas y reglamentos necesarios para la aplicación de las disposiciones de la ley y para el adecuado desempeño de las facultades y funciones asignadas a la Oficina por la ley. Los reglamentos de la Oficina, excepto los relativos a su organización y funcionamiento interno, se aprobarán de conformidad con las secs. 2101 et. seq. del Título 3, conocida como Ley de Procedimiento Administrativo Uniforme.

El Reglamento sobre Adjudicación de la Oficina versa sobre las controversias y disputas administrativas bajo la Ley de Procedimiento Administrativo Uniforme, *supra*, en cuyo dictamen final la agencia viene obligada a apercibir a las partes sobre el derecho de revisión ante los tribunales, no al procedimiento de arbitraje.

Agréguese a lo dicho que la Cláusula VII del Convenio de Transferencias de Competencias, en su acápite (d), dispone:

*"El procedimiento de arbitraje, en todo lo que no esté expresamente establecido en este convenio, se llevará a cabo de conformidad a la Ley Núm. 376 del 8 de mayo de 1951, según enmendada, 32 L.P.R.A. 3201 y siguientes, conocida como la Ley de Arbitraje; y de conformidad con el artículo 14.005 (b) de la Ley de Municipios Autónomos, de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4654 (h), la cual lee como sigue: "de conformidad con las secs. 3201 et. seq. del Título 32, después de agotado el procedimiento de conciliación ante el Comité de Asuntos Municipales".*

Obsérvese que la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, *supra*, mandata claramente que el procedimiento de arbitraje se llevará a cabo de conformidad con la Ley de Arbitraje, *supra*. El Artículo 11 de la Ley de Arbitraje, 32 L.P.R.A. sec. 3211, dispone que *"Cuando el convenio por escrito incluya una disposición para ajustar mediante arbitraje una controversia que surja entre las partes subsiguientemente a dicho convenio o en relación con el mismo, la parte que pida el arbitraje diligenciará a la otra parte, ya personalmente o ya por correo certificado, notificación por escrito de su intención de arbitrar".*

*"El arbitraje tiene que ser viable de conformidad con lo pactado. No es viable cuando requiere tres (3) etapas y las primeras dos (2) son imposibles de cumplir por la carencia de los vehículos procesales para implantarlas: es decir, el Comité de Coordinación y el procedimiento de mediación ante la Oficina del Comisionado de Asuntos Municipales."*

De conformidad con lo anterior, concluimos que los fundamentos aducidos por A.R.P.E. para solicitar la desestimación del recurso carecen de mérito.

## III

Pasemos, a continuación, a considerar la contención de A.R.P.E. a los efectos de que todos los asuntos relacionados con el proyecto *"Cerca del Cielo"* estaban pendientes ante dicha agencia para la fecha de la aprobación del Convenio. Este asunto fue abordado en la sentencia que emitimos hoy en el caso núm. Núm. KLRA-97-00359, en la que concluimos que el Municipio había errado al enviar el expediente a A.R.P.E. para la evaluación de las enmiendas a los planos de urbanización del proyecto *"Cerca del Cielo"*, toda vez que el Municipio, por virtud de la aprobación del Convenio y de la Ley de Municipios Autónomos, *supra*, tenía la facultad para aprobar las enmiendas a los planos presentados por la parte proponente y todos los asuntos relacionados con el proyecto en cuestión. Allí expresamos lo siguiente:

*"De entrada debemos aclarar que rechazamos la posición asumida por A.R.P.E. a los efectos de que el proyecto en cuestión estaba pendiente ante dicha agencia y, por ello, retuvieron la facultad para evaluar el mismo desde sus inicios y en todas sus etapas posteriores."*

En el caso de autos A.R.P.E. había emitido, antes de la aprobación del Convenio y la Ley de Municipios Autónomos, *supra*, varias resoluciones referentes al proyecto de urbanización *"Cerca del Cielo"*.

El 3 de mayo de 1990, A.R.P.E. emitió una resolución en la cual aprobó una segunda enmienda a los planos de construcción para la urbanización, los cuales habían sido aprobados originalmente el 14 de julio de 1978. Esta enmienda estaba relacionada con el número de solares que tendría el proyecto. En esa resolución se dispuso además que *"[e]ste permiso no varía las condiciones establecidas en el permiso de urbanización expedido el 14 de julio de 1978 y su enmienda. Los mismos se mantienen en todo su vigor y efecto"*. Una de las condiciones que se mantuvo en todo su vigor y efecto era la referente al término de vigencia del permiso en cuestión. A tales efectos, el permiso expedido por A.R.P.E. el 14 de julio de 1978 disponía, en lo pertinente, lo siguiente:

*"La aprobación del presente Plano de Construcción estará vigente por un período de tres años, a partir de la fecha de este Informe, entendiéndose que de no iniciarse la construcción de las facilidades o en su efecto garantizarse las mismas mediante la prestación de las fianzas correspondientes dentro del término indicado, se interpretará como que se ha desistido del caso, quedando el mismo ARCHIVADO para todos los efectos legales"*.

Contrario a lo señalado por A.R.P.E., la aprobación de la segunda enmienda el 3 de mayo de 1990 constituyó una decisión final sobre el procedimiento ante la consideración de A.R.P.E., el cual perdió vigencia con el transcurso de los tres años.

En la resolución emitida el 13 de diciembre de 1982 se aprobó la segregación e inscripción de una parcela con una cabida de 6030.65 metros cuadrados que serviría de parque pasivo en el proyecto *"Cerca del Cielo"*, caso núm. 78-63-B-196-PPL. Esta resolución representaba otra etapa en la consulta núm. 78-63-B-196-PPF relacionada a la referida urbanización, pues en el plano de construcción aprobado el 14 de julio de 1978 se había rotulado el área que sería dedicada a parque pasivo. La resolución fue notificada a las partes y constituyó una decisión final de A.R.P.E. en cuanto a la cabida del referido parque.

Por tanto, habiendo A.R.P.E. tomado una decisión final en cuanto a los permisos concedidos a la parte proponente, y toda vez que la Ley de Municipios Autónomos, *supra*, y el Convenio estaban vigentes, la solicitud de reapertura tenía que ser presentada ante la Oficina de Permisos del Municipio de Ponce para continuar con los trámites referentes al proyecto de la urbanización *"Cerca del Cielo"*.

Lo resuelto en el caso Núm. KLRA-97-00359 es enteramente aplicable al caso de autos, ya que dispone de la controversia ante nuestra consideración. Toda vez que hemos determinado que el Municipio tiene la facultad de evaluar todos los asuntos relacionados con el proyecto de urbanización *"Cerca del Cielo"*, resulta imperativo concluir que la facultad para aprobar el plano de inscripción parcial del proyecto y la segregación de los solares también le corresponde al Municipio. Por ello, es innecesario discutir el señalamiento de error del Municipio respecto a que la resolución dictada por A.R.P.E. el 11 de febrero de 1997 fue prematura.

A.R.P.E. no estaba facultada por la ley ni por el reglamento para aprobar el plano de inscripción parcial sometido por la parte proponente y la segregación de treinta y siete (37) solares del proyecto. Esa facultad le correspondía al Municipio. En aras de agilizar los procedimientos, dejamos sin efecto la resolución recurrida por el fundamento expuesto.

Somos conscientes de que en el presente recurso el recurrente, Municipio de Ponce, no ha planteado que el caso se le debe devolver a su Oficina de Permisos. Bajo ningún concepto ello obra como un impedimento a que reconozcamos que ese es el remedio que procede en derecho.

Debemos tener presente que el Municipio de Ponce solicitó la consolidación de ambos recursos. Sería un acto inútil y espúreo emitir resoluciones contradictorias devolviendo uno de los casos a la Oficina de Permisos de Ponce, y, requerirle simultánea e innecesariamente a A.R.P.E., que le solicite un informe al Municipio de Ponce para que, entonces, A.R.P.E. devuelva el expediente, sin ulterior acción, a la Oficina de Permisos del Municipio. Es sabido que *"el debido proceso de ley ni el derecho coexisten para exigir cosas imposibles, absurdas, ni inútiles e innecesarias." Pueblo v. Andréu González*, 105 D.P.R. 315, 321 (1976); *López Alcalde v. Tribunal Superior*, 90 D.P.R. 304, 314 (1964); *Piereschi v. Comisionado Agricultura*, 62 D.P.R. 114, 120 (1943).

Es asunto trillado que es imposible abdicar a la jurisdicción que se tiene, y que, en ausencia de ella, ninguna agencia o tribunal puede arrogársela. No existe discreción para asumir jurisdicción donde no la hay. *Martínez v. Junta de Planificación*, 109 D.P.R. 839 (1980); *Maldonado v. Pichardo*, 104 D.P.R. 778 (1976). La Oficina de Permisos del Municipio de Ponce no puede conferirle a A.R.P.E. una jurisdicción que no tiene, máxime cuando este Panel ha resuelto anteriormente, en más de una ocasión, que A.R.P.E. no es la agencia con jurisdicción para dilucidar controversias similares a la de autos. Véase nuestras sentencias en los casos Núm. KLRA-96-00260, emitida el 15 de diciembre de 1997, y el caso Núm. KLRA-97-00523, el 30 de enero de 1998.

Por ello, es indispensable que adjudiquemos a cuál de las agencias administrativas corresponde resolver la controversia planteada en las solicitudes presentadas por el proyectista. No es justo mantener al proyectista atrapado en el ir y venir administrativo. El único resultado de ese vaivén es la dilación indebidamente prolongada de los procedimientos, con el consiguiente saldo negativo de costos adicionales innecesarios para todas las partes.

Es norma reiterada en derecho apelativo que la revisión de un dictamen judicial se da en contra de la decisión y no de sus fundamentos. Ese principio es especialmente importante en lo referente a cuestiones jurisdiccionales.

Sería ilógico que le reconociéramos al Municipio de Ponce la facultad de transferir a A.R.P.E. una jurisdicción que no tiene, vulnerando, de paso, decisiones previas nuestras que han dictaminado que es a la Oficina de Permisos del Municipio a quien corresponde dilucidar esos asuntos.

Constituiría una incongruencia que dictaminemos que A.R.P.E. no tiene jurisdicción para considerar la controversia de autos, y le permitiéramos que la adjudicara. *Brunet Justiniano v. Hernández Colón*, **92 J.T.S. 45** (1992).

En consecuencia, tenemos la obligación de cumplir con nuestra directriz procesal de que *"[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones...".* 32 L.P.R.A. Ap. III R. 43.6.

**IV**

A la luz de lo discutido, expedimos el auto solicitado, revocamos la resolución emitida por A.R.P.E. el 11 de febrero de 1997 e instruimos a dicha agencia a que devuelva dentro de diez (10) días, contados a partir de que esta sentencia advenga final y firme, el expediente relativo a la consulta núm. 96-63-C-506-UPPI a la Oficina de Permisos del Municipio de Ponce. Como ya expusimos en el Núm. KLRA-97-00359, le ordenamos a la Oficina de Permisos a que, en un término no mayor de treinta (30) días, resuelva todo lo relativo a las enmiendas a los planos de construcción de la urbanización Cerca del Cielo, incluyendo lo referente al número de solares del proyecto, la cabida del parque pasivo, y a la segregación de los solares solicitada por la parte proponente.

El Juez Aponte Jiménez disiente con opinión escrita.

Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau<br>
Secretaria General

### ESCOLIOS 98 DTA 129

1. El Municipio nos solicitó la revisión de dicha resolución mediante el recurso Núm. KLRA-97-00359. Como veremos más adelante, lo allí resuelto guarda estrecha relación con el presente recurso.

2. En ambos casos el Hon. Aponte Jiménez, J., disintió por entender que este Tribunal carecía de jurisdicción para entender en los recursos de revisión judicial por no haber agotado las partes el procedimiento de conciliación y arbitraje provisto en el Convenio.

## VOTO CONCURRENTE Y DISIDENTE DEL JUEZ
## DE APELACIONES SR. APONTE JIMENEZ — 98 DTA 129

Aunque estoy de acuerdo con que el Municipio de Ponce tiene legitimación activa para presentar el presente recurso, y también con revocar la resolución recurrida, los fundamentos para esto último son totalmente distintos a los que adopta la mayoría de este panel como base para su dictamen.

El 13 de diciembre de 1982, la Administración de Reglamentos y Permisos (A.R.P.E). aprobó un plano de inscripción y autorizó la segregación de una parcela de terreno rotulada en dicho plano *"Parque Pasivo"* la cual serviría a un proyecto de urbanización residencial. Posteriormente, como resultado de unos cambios en el proyecto, la cabida de la parcela designada *"Parque Pasivo"* disminuyó. El 3 de diciembre de 1996, la Oficina de Permisos del Gobierno Municipal Autónomo de Ponce, luego de tener ante su consideración el caso por un año, *"elevó"* el mismo a la A.R.P.E. para que dicha agencia considerase una enmienda al plano de inscripción originalmente aprobado por tratarse de un caso donde ya las obras de construcción habían sido construidas y habida cuenta que lo construido no concordaba con lo previamente aprobado.

El 30 de enero de 1997, la A.R.P.E. emitió resolución en el caso así remitido por la Oficina de Permisos. A petición del proponente de la enmienda anuló el plano de inscripción original. Aprobó un plano sustituto sometido haciendo constar que la cabida para el referido *"Parque Pasivo"* había sido enmendada de acuerdo a lo solicitado. Dicha resolución se notificó el 30 de enero de 1997. El 19 de febrero de 1997, el Municipio de Ponce le solicitó a la A. R. P.E. reconsideración. Adujo que al emitir la resolución adoptando un plano de inscripción sustituto, no le solicitaron al Municipio sus comentarios tal y como lo requiere el Art. 13.012 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4610. El 11 de febrero de 1997, antes de haber transcurrido los veinte (20) días dispuestos en la sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2165, según enmendada, para que el Municipio de Ponce solicitara reconsideración a la resolución del 28 de enero de 1997 aprobando el plano de inscripción sustituto, la A.R.P.E. emitió una segunda resolución. Autorizó la segregación de varios solares del proyecto de vivienda residencial que serviría el aludido *"Parque Pasivo"*. A esta segunda resolución de la A.R.P.E., el Municipio de Ponce también solicitó reconsideración. Hizo un recuento sobre las dos resoluciones emitidas por dicha agencia como resultado de haberle el Municipio referido los casos para su consideración, y la moción presentada el 19 de febrero de 1997 solicitando la reconsideración de la resolución emitida el 28 de enero de 1997. Argumentó que en lo referente a la segunda resolución de la A.R.P.E. autorizando la segregación de varios solares de la urbanización, dicha agencia tampoco solicitó del Municipio sus comentarios. Finalmente, solicitó que la A.R.P.E. dejara sin efecto la segunda resolución emitida. Se basó en que la misma fue adoptada antes de vencer el término de veinte (20) días que disponía el Municipio para solicitar reconsideración de la primera resolución emitida.

Al no actuar A.R.P.E. sobre las mociones de reconsideración presentadas dentro del término de

quince (15) días dispuesto por la sec. 3.15, *supra*, el Municipio de Ponce acude ante este Foro en solicitud de revisión de decisión administrativa. Imputa error al emitir la referida agencia la segunda resolución antes de haber expirado el término dispuesto para que el Municipio pudiera solicitar reconsideración a la primera, razón por la cual apunta que los dos dictámenes emitidos por la A.R.P.E. no se han convertido en final y firme. Nos solicita que ordenemos a la A.R.P.E. abstenerse de considerar las enmiendas solicitadas al plano de inscripción y de continuar actuando en el caso *"hasta tanto la [primera] Resolución dictada... advenga final y firme."* Nada más ni nada menos. Aunque a mi juicio tiene razón el Municipio de Ponce en lo que nos plantea, la mayoría de este panel vuelve a resolver lo que no se le pide. Sin tomar en consideración lo expuesto por el propio Municipio de Ponce en el sentido de que aquí se trata de unas obras construidas por lo que la jurisdicción es de la A.R.P.E. para resolver todo lo que le refirieron, insisten en adjudicar que la facultad para aprobar los planos sustitutos es de la Oficina de Permisos del Municipio de Ponce y no de la A.R.P.E. De endosar lo anterior estaría alterando no sólo mi visión relacionada con que antes de resolver cuestiones de jurisdicción sobre competencia delegada al Municipio de Ponce se deben agotar los mecanismos de conciliación y arbitraje contemplados en la Ley de Municipios Autónomos - véase voto disiente del suscribiente en el caso Núm. KLRA96-260 - sino que también estaría pasando por alto la distinción que el propio Municipio de Ponce establece al mencionarnos que aquí se trata de unas obras construidas y no de una nueva solicitud por lo que la jurisdicción para atender el asunto es de la A.R.P.E.

Por los motivos consignados disiento de la sentencia revocatoria emitida en este caso por la mayoría de este panel. En su lugar, ordenaría a la A.R.P.E. que al evaluar los asuntos que le remitió la Oficina de Permisos del Municipio de Ponce, reconociendo así su jurisdicción, le requiera los comentarios antes de resolver los mismos.

**JOSE M. APONTE JIMENEZ**
**Juez de Apelaciones**