**Jim W. STAMBAUGH, Appellant,**

v.

**Lon F. PRICE et al., Appellees.**

Supreme Court of Tennessee.

Jan. 26, 1976.

**930**

James E. Beckner, Stambaugh & Beckner, Morristown, for appellant.

John F. Dugger, Dennis H. Inman, William O. Foutch, Jr., Morristown, for appellees.

## OPINION

BROCK, Justice.

This is an election contest involving the validity of the election of appellee, Scott Reams, to the office of Judge of the Juvenile Court of Hamblen County at the general election held on August 1, 1974. Appellee, Reams, received a majority of the votes cast, 134 more votes than were cast for appellant, Jim Stambaugh, who was the incumbent judge. Appellant, Stambaugh, filed this action challenging Reams' election upon the ground that the latter was only twenty-six years of age and, thus, disqualified under Article 6, § 4, Constitution of Tennessee, which requires that all judges be not less than thirty years of age. The Chancellor held that the provision of the Private Act creating the Juvenile Court of Hamblen County which purported to fix the minimum age for Judge of the Juvenile Court at twenty-one years was in violation of Article 6, § 4, Constitution of Tennessee, and, therefore, void; that Reams was, therefore, not eligible to be a candidate for the office of Juvenile Court Judge and since he received the highest number of votes cast, that the election on August 1, 1974, for Juvenile Court Judge was void under the provisions of T.C.A. § 2–1713. The Chancellor further held that a vacancy existed in the office under the provisions of T.C.A. § 17–112 and that the Governor should appoint a suitable person to fill it until the next biennial election. The Governor has

complied by appointing Don D. Greene to serve as Special Judge until the next election.

The incumbent, Stambaugh, has appealed contending that he is entitled to the office. He asserts two theories, viz.: (1) That Reams, the election commission and the voters were informed prior to the election that Reams was not eligible to be a candidate and, therefore, the votes cast for him were not legal votes within the meaning of T.C.A. § 2–1713, leaving Stambaugh as the candidate receiving the highest number of "legal votes" cast; or, in the alternative, (2) the Governor had no authority to appoint an interim judge under T.C.A. § 17–112 because that statute applies only in the event of a vacancy caused by death, resignation or removal of an incumbent judge, which is not the case here since Reams was never an incumbent; therefore, Stambaugh is entitled to continue in the office as a holdover as provided by Article 7, § 5, Constitution of Tennessee.

### I

■ Appellant cites respectable authority for the proposition that votes knowingly cast for a candidate who cannot possibly exercise the functions of the office, if elected, are thrown away. *State ex rel. Bancroft v. Frear,* 144 Wis. 79, 128 N.W. 1068 (1910); *Fields v. Nicholson,* 197 Ind. 161, 150 N.E. 53 (1926). We have no quarrel with the rule but are not persuaded that it is applicable to the facts of this case. Although the candidate, Reams, and the members of the election commission may have known of the constitutional ineligibility of Reams well in advance of the election, the electorate did not have such knowledge. The only such information imparted to the general public consisted of newspaper advertisements published by Stambaugh on the last day before the election. We think that such notice is inadequate to justify a finding that the voters for Reams "knowingly threw their votes away," so that their

votes were not "legal votes." We affirm the decision of the Chancellor that no one was elected to the office of Judge of the Juvenile Court on August 1, 1974, the election being void under T.C.A. § 2–1713, which provides:

> "If the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of constitutional disqualifications on his part or for other causes, the election shall be declared void."

### II

As we understand the alternate theory of appellant, it is that T.C.A. § 17–112, under which the Governor has acted to appoint an interim judge, does not apply in this case and, therefore, that he continues in the office as a holdover under Article 7, § 5, Constitution of Tennessee, which provides: "Every officer shall hold his office until his successor is elected or appointed, and qualified."

T.C.A. § 17–112 provides:

> "Vacancies in office.—Whenever a vacancy, either by death, resignation, or removal, shall occur in the office of a judge of the Supreme Court or Court of Appeals, circuit judge, or chancellor, or judge of a criminal court, or judge of a special court of equal dignity with circuit and chancery courts . . . [it shall be filled at the next biennial election] . . . and in the meantime the governor shall appoint a person learned in the law and constitutionally qualified to discharge the duties of said office until such election can be had. . . ."

Appellant argues that no vacancy "by death, resignation, or removal" has occurred and, therefore, that T.C.A. § 17–112 fails to give the Governor authority to appoint an interim judge. We agree that T.C.A. § 17–112 does not apply and that the

Chancellor erred in holding that the Governor was authorized to appoint an interim judge in this case. However, our reasons differ from those advanced by appellant. Without deciding whether or not the facts in this case show a "vacancy" as contemplated by T.C.A. § 17–112, we hold that statute to be inapplicable because the Juvenile Court of Hamblen County is not "a special court of equal dignity with circuit or chancery courts . . . ." In our opinion, the Chancellor erred in holding it to be such a court.

■ In recent years the General Assembly has created a number of special courts possessing virtually the same subject matter jurisdiction as a circuit or chancery court or a combination of the two; their judgments are reviewable only by the Supreme Court, the Court of Appeals or the Court of Criminal Appeals; their judges are paid by the State and enjoy the benefits of regular circuit judges and chancellors. We think the term "special court[s] of equal dignity with circuit or chancery courts . . . ." was intended to designate these special courts and was not intended to refer to juvenile courts.

■ We note certain attributes of a juvenile court which, in our view, show that it is not "of equal dignity with circuit or chancery courts." The juvenile court is one of limited jurisdiction, while both the circuit and chancery courts are courts of general jurisdiction. The statute creating the juvenile court defines seven specific classes of cases in which the juvenile court has exclusive jurisdiction, and three in which it has concurrent jurisdiction with the county court. T.C.A. §§ 37–203 and 37–204.

■ The chancery court, by contrast, has inherent jurisdiction, extending beyond its statutory jurisdiction, to act in relation to the property and the other interests of minors. Cummings v. Patterson, 54 Tenn. App. 75, 388 S.W.2d 157 (1964), appeal after remand 59 Tenn.App. 536, 442 S.W.2d 640 (1968).

Notwithstanding T.C.A. § 37–204, the juvenile court's jurisdiction to adjudicate custody of children may be pre-empted by circuit courts hearing domestic relations' cases, Dearing v. Dearing, 50 Tenn.App. 394, 362 S.W.2d 45 (1962), and by chancery or circuit courts hearing petitions to adopt. T.C.A. § 36–123, Hall v. Honeycutt, 489 S.W.2d 37 (Tenn.App.1972).

The territorial jurisdiction of a juvenile court is limited to one county, while that of a circuit or chancery court often extends over several counties; indeed, the latter are state courts whose judges may be designated to sit in any locality in the state. Juvenile court judges are paid by the county, while circuit judges and chancellors are paid by the state.

While it is true, as the Chancellor observed, that the juvenile court is a court of record by virtue of T.C.A. § 37–258, the same Section provides that any party, including the state or its subdivisions, may appeal to the circuit court and there have, not appellate review, but a trial de novo.

■ While the juvenile court can acquire in personam jurisdiction over adults in the sense that it can render a binding judgment against them, its subject matter jurisdiction is strictly limited to persons who have not reached majority. State ex rel. Hyatt v. Bomar, 210 Tenn. 249, 358 S.W.2d 295 (1962).

Since T.C.A. § 17–112 does not apply to authorize the Governor to appoint an interim judge, does it follow that appellant is entitled to continue in office until the next biennial election under Article 7, § 5, Constitution of Tennessee? That provision entitles an incumbent to hold over only "until his successor is elected or appointed and qualified." In our opinion the law provides for the election of his successor by the quarterly county court.

■ T.C.A. § 2–1713, above-quoted, expressly requires that the election, in the

circumstances here present, shall be declared void. Further, T.C.A. § 8–2801 provides:

"Any office in this state is vacated:

. . . . .

(4) By the decision of a competent tribunal, declaring the election or appointment void or the office vacant."

And T.C.A. § 8–2806 provides:

"Whenever there is a final judgment of a competent tribunal, declaring any election or appointment void, or any office vacated, such judgment shall promptly be certified by the clerk to the appointing power or power whose duty it is to take steps to fill the vacancy."

Finally, T.C.A. § 5–513 provides:

"Vacancies . . . in the following offices are filled by election or appointment of the county court: Sheriffs, trustees, registers, public administrators and guardians, constables, county court clerks, county tax assessors, or any other county officer, not otherwise provided for."

We hold that the juvenile court judge falls into the category ". . . any other county officer, not otherwise provided for," that a vacancy exists in the office of juvenile court judge, and that the quarterly county court possesses the authority under T.C.A. § 5–513 to fill the vacancy by electing an interim judge to serve until the next biennial election.

█ In reaching the conclusion that the juvenile court judge is a county officer and not a state officer, we have considered several factors.

First, the county pays his salary. "The primary badge of a State officer is that the Legislature provides that the State pay the salary of the office." *Durham v. Dismukes,* 206 Tenn. 448, 333 S.W.2d 935 (1960).

Secondly, the juvenile court can appoint probation officers to make investigations, reports, and recommendations for the court's use and to perform services for wards of the court and for children on probation. T.C.A. § 37–206. These officers are in addition to the state probation officers, and their salaries may be fixed by the county court. T.C.A. § 37–205.

The juvenile judge in counties of 600,000 population or less may appoint a member of the bar who can hear cases in the first instance (although the parties may demand a rehearing before the judge), and who can enter any and all process, and whose findings and recommendations, upon confirmation by the judge, become the findings and order of the court. This potentially important officer may be qualified under county civil service regulations. T.C.A. § 37–207.

In *Durham v. Dismukes, supra,* the Court laid down a number of criteria which are helpful in deciding whether an office is one of the county or of the state. Where no legislative intent was apparent to create a court with jurisdiction beyond the borders of the county; where the county bore the expense of the court, paid the judge's salary, and was entitled to the fees collected; and where "the overall duties are applicable to the people of the county alone"; it was held that the General Sessions Court was a county, not a state, office.

In addition to the expenses of juvenile courts already noted, the law provides that the county pay for the following items: medical examinations and treatment of children, compensation and expenses of attorneys for a party, compensation of guardians *ad litem,* costs of serving process, and transportation costs for children and witnesses. T.C.A. § 37–249. The portion paid by the county is substantial and includes the more usual and routine expenses of the operation of the court. At the least, the county's contribution is adequate support for the conclusion that the juvenile court is primarily a county institution.

█ Therefore, we conclude that Article 7, § 5, Constitution of Tennessee, entitles

the appellant to hold over only until such time as his successor is elected by the quarterly county court, pursuant to T.C.A. § 5–513, and is qualified according to law; but it does not entitle him to hold over until the next biennial election. *Southall v. Billings,* 213 Tenn. 280, 375 S.W.2d 844 (1963). The decision in *Conger v. Ray,* 151 Tenn. 30, 267 S.W. 122 (1924), and cases of similar import hold to the contrary but should no longer be considered as authority upon the question; they are inconsistent with *Southall v. Billings, supra,* which we expressly approve and reaffirm.

The decree of the Chancery Court is vacated and this cause is remanded to that Court for further proceedings consistent with this opinion. Costs in this Court are adjudged against appellant.

FONES, C. J., and COOPER, HENRY and HARBISON, JJ., concur.