# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 5, 2000 Session

## TIP AND BARBARA TERRY v. SCOTT BOTTS

### Appeal from the Juvenile Court for Scott County
No. 8642, Michael A. Davis, Judge

### FILED FEBRUARY 22, 2001

### No. E2000-01288-COA-R3-CV

This appeal from the Scott County Juvenile Court concerns whether the Trial Court exercised proper subject matter jurisdiction in hearing a Petition to Establish Grandparent Visitation. Additionally, it concerns whether the Trial Court erred in granting visitation rights of minor grandchildren to Tip and Barbara Terry, the maternal grandparents. The Appellant, Scott Botts, appeals the decision of the Juvenile Court. We reverse the order of the Trial Court and dismiss the Petition.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Dismissed; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. CHARLES D. SUSANO, JR., J., filed a concurring opinion.

Ricky A. W. Curtis, Knoxville, Tennessee, for the Apellant, Scott Botts.

Howard R. Ellis, Oneida, Tennessee, for the Appellees, Tip and Barbara Terry.

### OPINION

This appeal arises from a Petition to Establish Grandparent Visitation filed by maternal grandparents, Tip and Barbara Terry, seeking visitation with their three grandchildren, Slone Morgan Botts, Cade Scott Botts, and Jolie Megan Botts. The father of the three minor children, Scott Botts, presents for our review four issues, which we restate: 1) whether the Trial Court exercised proper subject matter jurisdiction in hearing a Petition to Establish Grandparent Visitation; 2) whether the Trial Court erred in relying on expert testimony; 3) whether the Trial Court's finding that a substantial risk of harm exists with respect to all three minor children preponderates against the evidence presented at trial; and 4) whether the application of T.C.A. 36-6-306 unconstitutionally interfered with the fundamental rights of the Appellant to rear his children.

We dismiss the order of the Trial Court and remand for further proceedings, if any, consistent with this opinion.

Scott and Paula Botts were divorced in Union County on March 9, 1998. There was one child, Slone Morgan Botts,[1] born of that marriage. Approximately one week after the divorce was final, Paula Botts discovered that she was pregnant. On October 21, 1998, she gave birth to a set of twins, Jolie Megan Botts and Cade Scott Botts. Scott Botts is listed on the birth certificates as the father of the twins. Even though they divorced, Scott and Paula Botts maintained a close relationship sharing their three children and occasionally cohabiting. Unfortunately, shortly after the birth of the twins, Paula Botts was diagnosed with cancer and died February 23, 1999.

On April 19, 1999, Scott Botts filed a Petition for Legitimation and Custody of Jolie Megan Botts and Cade Scott Botts in the Juvenile Court for Scott County.[2] An order was entered on the same day declaring Scott Botts the natural and biological father of the twins and awarding him sole custody of these two children. There is no issue on appeal as to the paternity of the children.

Mr. and Ms. Terry, the parents of Paula Botts, were actively involved in the lives of their grandchildren prior to the death of their daughter. Mr. and Ms. Terry were substantially more involved with Slone, the oldest grandchild, than the twins, as visitation and communication with the grandchildren drastically decreased following the death of Paula Botts. The twins were only four months old when their mother died. Mr. and Ms. Terry provided childcare a few hours almost every day for the oldest child, Slone. They picked her up from daycare many afternoons and kept her until her mother came home from work. Mr. and Ms. Terry assisted their daughter with childcare during her illness as well. It is evident from the record that Mr. and Ms. Terry were very close to their granddaughter, Slone, and provided physical as well as emotional support to their daughter and their grandchildren.

Immediately after the death of Paula Botts, some visitation did take place between Mr. and Ms. Terry and the minor children, though it was less frequent than before her death. Prior to the death of Paula Botts, an incident occurred while she was hospitalized. Scott Botts attempted to pick his children up from the Terrys' residence, as it was time for his visitation. Upon arrival, Ms. Terry resisted in turning the children over to their father. The facts are in dispute as to the details of the incident; however, it was obviously an antagonistic exchange.

There are several other incidents which occurred between Scott Botts and the Terrys. The facts vary as to the details of these incidents, also. Scott Botts alleges that Ms. Terry has made inappropriate comments about him to his daughter, Slone. This was denied by Ms. Terry at trial. Additionally, Scott Botts is concerned about Ms. Terry's ability to control her temper. Ms. Terry also denied a problem with her temper at trial, although it is evident from the record that Mr. Botts' concerns are valid. It appears from the record that problems arose at the funeral home

---

[1]Slone Morgan Botts was born of the marriage of Scott and Paula Botts on May 4, 1995 (a date of birth of June 6, 1995 is also found in the record).

[2]The Petition for Legitimation and Custody filed by Scott Botts makes reference to a separate action in Union County Circuit Court in which he was granted custody of Slone on March 2, 1999, however the Union County order is not contained in the record.

immediately following the death of Paula Botts concerning the amount of Ms. Terry's contact with the grandchildren at the funeral home and her displeasure at not having the opportunity to assist the children in the grieving process. Finally, Ms. Terry's testimony was inconsistent about when and how much visitation was taking place following the death of Paula Botts. However, what is most clear from this record is that Scott Botts and Ms. Terry have a strained relationship at best. The unfortunate state of this relationship has resulted in Scott Botts' decision to restrict and eventually end visitation between his children and Mr. and Ms. Terry.

Mr. and Ms. Terry filed a Petition to Establish Grandparent Visitation in the Juvenile Court for Scott County.[3] Upon finding that a substantial risk of harm existed as to all three minor children should they be denied visitation with their Grandparents, the Court determined that it was in the best interest of the children that Mr. and Ms. Terry be granted "reasonable visitation." The Court stated:

> the Court is going to find there's a substantial risk to all three of the grandchildren should they not have visitation with their grandparents. And, the court finds that it is in the best interest of these three grandchildren, all three, Slone, Cade, and Jolie, to visit with their grandparents, have reasonable visitation rights with them. And, as for establishing what those visitation rights are, . . . the reasonable visitation being the standard visitation of every other weekend, Friday at 6:00 to Sunday at 6:00, and then the holidays, I'm going to see if counsel can agree about splitting that time and school time when that age group develops.

The Court further ordered Ms. Terry to attend an anger management program.

As already noted, Scott Botts' appeal raises the four (4) issues heretofore set out.

We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Conclusions of law are reviewed de novo with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

The first issue on appeal is whether the Juvenile Court for Scott County had subject matter jurisdiction in this case. In *Brown v. Brown*, 296 S.W. 356, 358 (Tenn. 1927)(quoting

---

[3]The Petition to Establish Grandparent Visitation Rights was based on T.C.A. 36-6-306, which was in effect on May 10, 1999, the day the Petition was filed. It should be noted that T.C.A. 36-6-306 was amended effective June 14, 2000 following this Court's decision in *Ellison v. Ellison*, 994 S.W.2d 623 (Tenn. Ct. App. 1998). *See*, 2000 Tenn. Pub. Acts ch. 891. The hearing on this matter was March 2, 2000, and the order was entered March 7, 2000. While the actual statute the Petition was filed under has been amended, the Trial Court followed the new standard as set forth in T.C.A. 36-6-306 as it was amended effective June 14, 2000.

*Chambers v. Sanford & Treadway*, 289 S.W. 533, 534 (Tenn. 1926) *overruled on other grounds*, *Five Star Express, Inc. v. Davis*, 866 S.W. 2d 944 (Tenn. 1993)), the court states:

> Jurisdiction of the subject-matter relates to the right of the court to adjudicate or to make an award through the remedies provided by law upon facts proved, or admitted, in favor of or against persons who present them or who are brought before the court under sanction of law. Jurisdiction of the subject-matter is not waived by appearance and may be taken advantage of at any stage of the proceeding, for in such cases the judgment would be coram non judice.

Neither party raised the issue of subject matter jurisdiction before the Trial Court. "[W]henever it appears by suggestion of the parties or otherwise that the court lacks subject matter jurisdiction of the subject matter, the court shall dismiss the action." Tenn. R. Civ. P. 12.08. "[J]urisdiction of the subject matter is conferred by the Constitution and statutes." *Turpin v. Conner Bros. Excavating Co.*, 761 S.W. 2d 296, 297 (Tenn. 1988), *overruled on other grounds*, *Five Star Express, Inc. v. Davis*, 866 S.W. 2d 944 (Tenn. 1993).

Scott Botts argues on appeal that the Trial Court lacked subject matter jurisdiction to adjudicate this case in that neither T.C.A. 37-1-103, which provides for exclusive original jurisdiction in juvenile court, nor T.C.A. 37-1-104, which provides for concurrent jurisdiction in juvenile court, suggests that the juvenile court has jurisdiction to hear a grandparent visitation case. Additionally, the Grandparent Visitation Statute, codified at T.C.A. 36-6-306,[4] does not provide juvenile court with subject matter jurisdiction over actions involving grandparent visitation rights. The statute states:

> T.C.A. 36-6-306 Visitation rights of parents of deceased or divorced parents. (a) If: (1) Either the father or mother of an unmarried minor child is deceased; then the parents of such deceased person . . . may be granted reasonable visitation rights to the child during its minority by a court of competent jurisdiction upon a finding that such visitation rights are in the best interests of the minor child, based on the factors in § 36-6-307(d)(2).

Further, he argues that because the Circuit Court for Union County awarded custody of Slone Botts to Scott Botts on March 2, 1999,[5] that court retains subject matter jurisdiction over actions involving visitation with respect to Slone.

---

[4]T.C.A. 36-6-306 as cited herein refers to the statute effective July 23, 1997.

[5]The record does not contain the order awarding custody of Slone Botts to her father, Scott Botts in the Circuit Court for Union County.

The Terrys maintain that as of February 24, 1999, when Paula Botts' estate was opened for probate in the Scott County Probate Court, her three children were without a legal guardian. Specifically, the Terrys contend that:

> upon the mother's death and at the time a petition was filed in Scott County Probate Court the father, Scott Botts, had little or no legal relationship to his children. He was not the physical or legal custodian, guardian, father or anything else to the twins, Cade and Jolie Botts.

The Terrys assert that the probate court had jurisdiction to appoint a guardian for the children under T.C.A. 16-16-107(7), and T.C.A. 34-12-101(a), which respectively state as follows:

> T.C.A. 16-16-107 Original jurisdiction. The county court has original jurisdiction in the following cases: (7) The appointment and removal of guardians for minors and persons of unsound mind, and all controversies as to the right of guardianship, and the settlement of guardian accounts.

> T.C.A. 34-12-101 Actions for appointment of guardian -- Where brought. (a) Actions for the appointment of only a guardian of the person may be brought in the juvenile court in the county in which there is venue. Actions for the appointment of a guardian of the person or property or both may be brought in a court exercising probate jurisdiction or any other court of record in the county in which there is venue.

The Terrys conclude that it having been established that the probate court had jurisdiction over the children, it follows that juvenile court also has jurisdiction over the children pursuant to T.C.A. 37-1-104 (a)(2) which states:

> T.C.A. 37-1-104 Concurrent jurisdiction. (a) The juvenile court has concurrent jurisdiction with the probate court of proceedings to: (2) Determine the custody or appoint a guardian of the person of a child.

We are compelled to disagree with the Terrys and we hold that the Juvenile Court for Scott County did not have jurisdiction over the subject matter in this case.

There is nothing in the record to indicate that a guardianship petition was filed in the probate court nor is there any evidence in the record that these children were in need of a legal guardian, it being evident that they have a father. Scott and Paula Botts were divorced in the Circuit Court for Union County on March 9, 1998. Slone is a child born of that marriage. Determinations concerning custody and visitation were made in the marital dissolution

agreement regarding this child. There is no question that Scott Botts is and always has been the biological and legal father of Slone Botts.

Juvenile Courts are courts of limited jurisdiction. *Stambaugh v. Price*, 532 S.W.2d 929, 932 (Tenn. 1976). And as such, their subject matter jurisdiction is defined by statute. *Id.* The statute setting forth the exclusive original subject matter jurisdiction of juvenile court states in pertinent part:

> T.C.A. 37-1-103 Exclusive original jurisdiction. (a) the juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part: (1) Proceedings in which a child is alleged to be delinquent, unruly or dependent and neglected, or to have committed a juvenile traffic offense as defined in § 37-1-146; (2) All cases to establish paternity of children born out of lawful wedlock; to provide for the support and education of such children, and to enforce its orders.

Slone Botts has never been the subject of a delinquency, unruly, dependent and neglect, or paternity proceeding in juvenile court. The aforementioned statute does not include Grandparent Visitation Rights as a matter in which the juvenile court has exclusive original jurisdiction. We therefore hold that the Juvenile Court for Scott County lacked subject matter jurisdiction to entertain a Petition for Grandparent Visitation Rights with respect to Slone Morgan Botts. The judgment as to Slone Botts is accordingly reversed and the petition dismissed.

As for the twins, Jolie and Cade, it is also evident from the record that Scott Botts is and always has been the father of these two children. Scott Botts was presumed the father of the twins as they were born within three hundred (300) days of the date of the divorce pursuant to T.C.A. 36-2-304. The statute states:

> T.C.A. 36-2-304 Presumption of parentage. (a) A man is rebuttably presumed to be the father of a child if: (1) He and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce.

The date of divorce was March 9, 1998, and the twins were born on October 21, 1998, which easily falls within the three hundred (300) day requirement as set forth in the statute. Therefore, the argument that these children were without a parent or legal guardian is erroneous.

A Petition for Legitimation and Custody with regard to Jolie and Cade Botts was filed in the Juvenile Court for Scott County on April 19, 1999, approximately two (2) months after the death of Paula Botts. An order was entered on the same day declaring that Scott Botts is the "natural and biological father of said children." Further, it ordered that he be awarded sole

custody of the twins.  According to T.C.A. 37-1-103(a)(2), juvenile courts have exclusive original jurisdiction over matters of paternity.  The statute states in pertinent part:

> T.C.A. 37-1-103 Exclusive original jurisdiction. (a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:  (2) All cases to establish paternity of children born out of lawful wedlock; to provide for the support and education of such children, and to enforce its orders.

Scott Botts voluntarily brought Jolie and Cade Botts under the jurisdiction of the juvenile court when he filed the legitimation and custody petition.  Jolie and Cade were never a part of the divorce proceeding as they were born following the final decree for divorce.  Additionally, Slone Botts was never part of the legitimation proceeding that took place with respect to the twins in juvenile court.  Having adjudicated the legitimation and custody petition in juvenile court, has Scott Botts effectively subjected Jolie and Cade Botts to the jurisdiction of the juvenile court for disposition of a Petition to Establish Grandparent Visitation Rights which is a wholly independent proceeding from the legitimation and custody proceeding?  We think not.  There is a limited amount of law in Tennessee regarding this issue.  However, we believe the distinction as set forth in American Jurisprudence regarding jurisdiction of juvenile courts vis a′ vis other general civil courts should be adopted by the courts in Tennessee when the question arises as to whether juvenile court retains jurisdiction over cases independent of those falling within the statute governing exclusive original jurisdiction.

> The line of demarcation between the courts exercising general civil jurisdiction with respect to the care, custody, and control of minors and the juvenile court is well defined.  These courts, in dealing with the welfare and interest of minors under a given age, are entirely independent of each other.  Where the contest is between the parents, or between a parent and a third person, as to who should have the control and care of the minor, the court exercising general civil jurisdiction is the proper and exclusive tribunal to decide the issue.  But where a child is neglected or delinquent, and where the parent contributes to or is responsible for such neglect or delinquency, then the state has the paramount right, in the interest of the welfare of the child, to say who shall have the care, custody, and control of the child, and the juvenile court has been made the special and exclusive tribunal for determining such issue.

47 Am. Jur. 2d *Juvenile Courts and Delinquent and Dependent Children* § 4 1995.

The twins were brought under the jurisdiction of the juvenile court for the limited purpose of a legitimation proceeding.  None of these children have ever been brought under the protective arm of the juvenile court for a determination of delinquency, for a dependent and

neglected proceeding, or unruly petition. In Tennessee, the statute which determines this issue is codified at T.C.A. 37-1-103(c), which states:

> T.C.A. 37-1-103 Exclusive original jurisdiction. (c) When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until a person reaches the age of eighteen (18), except that the court may extend jurisdiction for the limited purposes set out in § 37-1-102(b)(4)(B) until the person reaches the age of nineteen (19).

It is well established under the aforementioned statute that once juvenile court has jurisdiction over a person, that person remains subject to the juvenile court jurisdiction until the age of eighteen (18). However, we do not interpret the language of this statute and the case law in Tennessee to include those persons brought into juvenile court for the limited purpose of a legitimation proceeding which was fully adjudicated, without any question of delinquency or dependency and neglect. It is unnecessary and illogical for the juvenile court to maintain jurisdiction over such persons for the determination of Grandparent Visitation Rights, which is an issue independent of the paternity proceeding and one that is between adults. While petitions for dependency and neglect, paternity, unruly behavior and delinquency all involve the minor person directly, a Grandparent Visitation Rights Petition is a lawsuit involving the Grandparents and the Parents of the minor children. Even though the children are the heart of the lawsuit, the parties actually involved are adults, as it is the constitutional rights of the parents potentially being affected, not those of the children. Had these children been involved in the juvenile court for matters of delinquency or dependency and neglect, it is logical to conclude that the juvenile court would maintain that jurisdiction to entertain a Grandparent Visitation Petition, but not in this instance.

> Juvenile Courts are courts of limited jurisdiction, see Stambaugh v. Price, 532 S.W.2d 929, 932 (Tenn. 1976), whose subject matter jurisdiction is defined by statute. The General Assembly has given juvenile courts exclusive subject matter jurisdiction over ten specific types of proceedings, including delinquency proceedings, dependency and neglect proceedings, and paternity proceedings. See Tenn. Code Ann. § 37-1-103 (Supp. 1998). However, this statute does not explicitly or by necessary implication, give juvenile courts subject matter jurisdiction over custody matters independent of one of the proceedings listed therein.

*Baltz v. Knight*, an unreported opinion of this Court, filed in Nashville on November 13, 1998. In this case, one issue on appeal dealt with whether the juvenile court had subject matter jurisdiction to modify a custody decree. The appellant, Mr. Baltz, argued that the juvenile court did, in fact, have such jurisdiction pursuant to T.C.A. 37-1-104(a)(2) which confers concurrent jurisdiction over matters involving the appointment of a guardian to a minor to the juvenile court. The Court disagreed, stating that "[o]nly circuit courts, chancery courts, and courts whose jurisdiction has been otherwise conferred by general or local act" have jurisdiction to hear

matters of custody arising during these proceedings. *Id.* In the case before us, the subject matter is the right of grandparents to visit their grandchildren. We believe this subject matter falls into the same category as visitation and custody matters and therefore the same reasoning should apply here.

Therefore, we hold that the Juvenile Court for Scott County lacked subject matter jurisdiction to entertain a Petition to Establish Grandparent Visitation Rights with respect to Jolie Megan Botts and Cade Scott Botts. The judgment as to the twins is accordingly reversed and the petition dismissed.

Because the Petition to Establish Grandparent Visitation Rights has been dismissed, the other issues raised by Scott Botts need not be addressed. However, there is one remaining issue that should not be ignored. The Trial Court found that a substantial danger of harm existed as to all three of these children should they be prohibited from visiting with their grandparents. The proof in the record concerning the twins and the testimony of the expert witness regarding this standard is disturbing. The expert witness at the trial, Dr. Bernard Lyons, testified that he had never met any of the children involved in this matter, and that his knowledge of the situation concerning the children was obtained during sessions with Mr. and Ms. Terry. Further, he testified that because the twins were only four months old when the visitation with the Terrys ended he could not testify as to the effects lack of visitation with the grandparents might have on them. More specifically, Dr. Lyons stated at trial:

> If the other children were four months old - - usually the first signs
> of attachment to a parenting figure are made obvious at around the
> age of six months, so I can't speak for the experience of the four-
> month-old's, the twins.

According to the record, at this point in the trial, Dr. Lyons' testimony was applicable only to Slone Botts, not the twins. Dr. Lyons had never met any of these children and very specifically stated that he could not testify as to the twins because they were not old enough to form a bond with their grandparents. This being so, it is our determination that there is no basis for the Trial Court's finding that a substantial danger of harm, or any other findings be made as to the twins, should they be denied visitation with their grandparents.

The judgment of the Trial Court is accordingly reversed, the petition dismissed and the cause remanded for such further proceedings, if any, as may be necessary. Costs below, as well as costs of appeal, are adjudged against the Appellees, Tip and Barbara Terry.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE