# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 1, 2014

## JARVIS PAYNE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-03486     W. Mark Ward, Judge

---

### No. W2013-01435-CCA-R3-PC - Filed July 16, 2014

---

Petitioner, Jarvis Payne, pled guilty to second degree murder pursuant to a plea agreement and was sentenced to fifteen years as a violent offender. He filed a post-conviction petition in which he alleged that a dying declaration by the victim showed that he lacked the requisite intent for second degree murder. He claimed that his attorney was ineffective because she did not make him aware of the victim's dying declaration and urged him to plead guilty without explaining the importance of intent in the charged offense. After listening to testimony from Petitioner's public defender and the prosecuting attorney, the post-conviction court dismissed the petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Eric Mogy, Memphis, Tennessee, for appellant, Jarvis Payne.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the respondent, State of Tennessee.

## OPINION

*Factual Background*

The Shelby County Grand Jury indicted Petitioner for first degree murder in the November 19, 2009 shooting death of his girlfriend, Laporsha Hailey. A public defender was

appointed to represent Petitioner. After plea negotiations, Petitioner agreed to plead guilty to the reduced charge of second degree murder and to serve a sentence of fifteen years at 100% incarceration as a violent offender.[1]

Petitioner's plea was accepted by the Criminal Court of Shelby County on November 8, 2011. At the beginning of the proceeding, the prosecutor briefly summarized the evidence for the court. She stated that the victim was shot multiple times in the home she shared with Petitioner, that the victim was taken to a fire station in a private vehicle, and that she was then transported to the Regional Medical Center by Memphis Fire Department ambulance, where she later died. The medical examiner ruled her death a homicide. Petitioner gave a written admission that he shot the victim multiple times.

The prosecutor explained at the plea hearing that she had agreed to reduce the charge because of information the public defender discovered and brought to her attention:

> [Petitioner] actually was with another individual and took [the victim] to a fire station where she was treated by paramedics to whom she gave the statement that he did not mean to shoot her. And we feel with that statement our burden of proof as to premeditation would be very severe. The fact that she was shot I show six or seven times, we think we could bear the intentional element of murder second degree but premeditation would be difficult under the circumstances.

Petitioner was then questioned extensively about the voluntariness of his plea. His responses indicated that he was aware of his rights, including his right to a jury trial, his right to the assistance of an attorney, and his right to testify on his own behalf or not to testify, if he so chose. The court accepted his guilty plea and imposed the agreed-upon sentence.

*The Post-Conviction Petition*

On June 13, 2012, Petitioner filed a timely post-conviction petition. The stated grounds for his petition were that he was denied effective assistance of counsel and that his plea was involuntarily entered because he did not understand its nature and consequences. Petitioner's arguments hinged on an article about his case that was published in The Commercial Appeal, a Memphis newspaper, one day after he pleaded guilty. He attached a copy of the article to his petition.

---

[1] A Range I offender like Petitioner is subject to a sentencing range of fifteen to twenty-five years for second degree murder. T.C.A. § 40-35-112(a)(1).

The headline of the article was "Woman's Dying Words a Parting Gift to Boyfriend." The story reported that Petitioner was allowed to plead guilty to the lesser charge of second degree murder because the prosecutor told the Criminal Court judge that the victim had told a paramedic as she was being transported, "He didn't mean to shoot me." The prosecutor was quoted as saying, "We feel that with that statement our ability to prove premeditation would have been difficult." The newspaper story also included Petitioner's claim that he had mistakenly shot the victim because it was dark and he thought she was an intruder.

Petitioner stated that he was unaware of the victim's dying declaration until his aunt read the article and sent it to him in the county jail, where he had been incarcerated for two years. He further alleged that although the public defender was aware of the declaration and conveyed the information to the prosecutor in order to negotiate the lesser charge, she never informed him or any of his family members about it. Petitioner attached his father's affidavit to his petition, which likewise stated that he and other family members were unaware of the alleged declaration until they read about it in the newspaper. Petitioner also asserted that if he had been aware of the declaration, he never would have accepted the offered plea.

A private attorney was appointed to represent Petitioner in the post-conviction proceedings, and a continuance was ordered so the attorney could investigate the matter and prepare an amended petition if necessary. On May 2, 2013, the court conducted an evidentiary hearing during which the public defender who had represented Petitioner at the guilty plea hearing testified and was questioned on direct and cross-examination. The transcript of the guilty plea hearing was entered into evidence as an exhibit. The district attorney who had prosecuted Petitioner was unavailable for the first post-conviction hearing, but she testified at a later hearing on May 10, 2013. Petitioner chose not to testify at either evidentiary hearing.

The public defender's testimony directly contradicted the assertion about the victim's statement made by the prosecutor and repeated by the newspaper. She testified that she and her investigator interviewed witnesses during her representation of Petitioner and that the investigator talked to three or four firemen at the fire station where the victim was first brought after the shooting. She denied that the victim made any statements to show that the shooting was unintentional or an accident or that she ever told the prosecutor that she had received any such statement.[2]

---

[2]The record indicates that the public defender's investigator who interviewed the firemen prepared an investigative report about the interview and suggests that the public defender and the prosecutor both saw the report prior to reaching a plea agreement. The report itself is not a part of the appellate record.

She testified, rather, that when the Petitioner touched the victim at the fire station, the victim said something like, "don't touch me. I'm hot," or "leave me alone." She further testified that she went to the prosecutor to argue for a reduced charge, with the argument that if Petitioner had intentionally shot her, the victim could have said so at the fire station. She contended that the fact that the victim did not do so suggested that the victim believed otherwise. The public defender was asked why the prosecutor stated on the record that the victim actually made the disputed statement, but the attorney for the State objected to that question as calling for a speculative answer.

When the district attorney took the stand on May 10, she testified that she misunderstood what the public defender had told her. She stated that it was a mistake on her part and that if she had understood the public defender correctly, she would have "gone on with murder one" in light of the number of shots fired at the victim. At the conclusion of testimony and closing arguments, the court took the matter under advisement.

The post-conviction court filed its Findings of Fact and Conclusions of Law in an order on May 17, 2013. The court noted that in a post-conviction proceeding, the burden is on the petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f). The court then discussed what had to be proved to establish that trial counsel's performance was deficient and that a plea that appeared to be voluntary on its face could nonetheless be deemed involuntary for purposes of post-conviction relief.

The post-conviction court summarized the plea hearing, finding that Petitioner did not offer testimony or other evidence to suggest that his guilty plea was not knowing, intelligent, and voluntary. The court also declared that it accredited the testimony of the public defender and the prosecutor, finding that the victim never uttered the words Petitioner attributed to her. The post-conviction court accordingly concluded that Petitioner failed to prove his claims, and it denied his petition for post-conviction relief. This appeal followed.

*Analysis*

Post-conviction relief is warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations in support of his or her grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law, however, are subject to de novo review with no presumption of correctness. *Id*. at 457.

The accused in a criminal prosecution has a constitutional right to effective assistance of counsel. *See* U.S. Const. Amend VI; Tenn. Const. Article I, § 9. That right also exists during plea negotiations. *See Hill v. Lockhart,* 474 U.S. 52 (1985). To succeed in a claim of ineffective assistance of counsel, a petitioner must prove two separate components, as established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show that counsel performed deficiently, which means that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 532 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that counsel's deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner argues that his attorney performed deficiently by not informing him that his victim had said "he didn't mean to do it," while she was lying gravely wounded in the fire station. He insists that if the public defender had informed him of that declaration, he would have chosen to go to trial rather than accept the offered plea. The public defender testified at the post-conviction hearing that her investigation did not reveal any such utterance.

She stated, rather, that the victim made a statement in the fire station that neither implicated nor exculpated Petitioner and that she used the absence of an implicating statement to try to persuade the prosecutor to reduce the charges against him. The prosecutor testified that she misunderstood the public defender's arguments and that as a result, she agreed to reduce the charges against Petitioner from first degree to second degree murder. Petitioner did not offer any evidence to controvert the testimony of the two witnesses.

After hearing the two attorneys, the post-conviction court declared that it accredited their testimony and concluded that the reported words "were never spoken by the victim, despite the misunderstanding as reflected by the prosecutor at the guilty plea hearing. Counsel was not deficient in this regard." We have carefully examined the record in this case, and we find that the evidence does not preponderate against the post-conviction court's finding that the public defender's performance was not deficient.

Moreover, even if the victim's statement was as the prosecutor understood it, the prosecutor explained her understanding at the guilty plea hearing in justifying a reduced charge. The Petitioner was present at the guilty plea hearing and therefore must have heard the prosecutor's explanation. This belies his testimony that he was unaware of the victim's purported statement when he pled guilty. We therefore agree that Petitioner is not entitled to post-conviction relief.

*Conclusion*

The judgment of the post-conviction court is affirmed.


_____

JERRY L. SMITH, JUDGE