STATE, *ex rel.*, *v.* KILVINGTON.

(*Nashville.*    January 17, 1898.)

1. STATE INDUSTRIAL SCHOOL. *Method of committing children to.*

Under Acts 1891, Ch. 195, authorizing the Judge or Chairman of any County Court to cause certain classes of " orphan, helpless, wayward, and abandoned children " to be brought before the County Court, and investing that court with the power, if it shall deem it for the manifest interest of such children, to commit them to the " Tennessee Industrial School," the Judge or Chairman of the Court has not the power to commit such children to said institution by a summary and arbitrary order, but the proceedings and order for that purpose must be had by and from the Court itself.    (*Post, pp. 228–234.*)

Act construed: Acts 1891, Ch. 195.

Code construed: §§ 4418–4433 (S.).

2. SAME. *Removal of child by habeas corpus.*

Although a child—a girl of tender years—has been committed to the Tennessee Industrial School, which is not a penal institution, but one for the industrial and moral training of unfortunate children, by the summary and unauthorized order of the Judge of a County Court, without the requisite proceedings and order of the Court itself, such child will not be removed from said institution by *habeas corpus*, and restored to the mother, its sole surviving parent, when it appears that the mother is of ill repute, and lives in a disreputable locality, and that the child, if restored to her, would be surrounded by and subjected to evil associations and corrupting influences. The Court will, in such case, subordinate the parent's rights to the protection and interests of the child.    (*Post, pp. 234–236.*)

Cases cited and approved: Lea *v.* White, 4 Sneed, 73; State *v.* Paine, 4 Hum., 523; Word *v.* Roper, 7 Hum., 111; 12 Abb. Pr. Rep., 92; 54 Ga., 159; 38 Hun, 127; 9 Phila., 571; 141 Mass., 203; 42 Am. Rep., 10; 40 Wis., 328; 4 Whart. (Pa.), 9.

State, *ex rel.*, *v.* Kilvington.

3. SAME. *Limit as to age.*

· The limitation as to age of children that may be committed to the Tennessee Industrial School, is for the protection of that institution, and cannot be invoked by a parent seeking by *habeas corpus* to remove from the school a child under the pre- scribed age, and restore it to unworthy and vicious hands and control. (*Post, pp. 236, 237.*)

Act construed: Acts 1891, Ch. 195.

## FROM DAVIDSON.

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

· MERRITT & BRIEN and J. WASHINGTON MOORE for Relator.

CHAMPION, HEAD & BROWN, E. A. PRICE, and JAMES A. RYAN for Kilvington.

WILKES, J. This is a *habeas corpus* proceeding to test the detention in the Tennessee Industrial School, at Nashville, Tennessee, of Lyndall Williams, a female about seven years of age at the time she was placed in said institution. The relator in the case is the mother of Lyndall Williams, and claims the right to recover the child and its custody by virtue of the parental relation to her. It appears that her father is dead. The defendant, Tennessee Industrial School, was originally founded by the ben- efaction of E. W. Cole, one of the most public spirited and charitable men Tennessee has ever pro-

duced.   After its foundation, it was taken in charge by the State, and is now being operated as a State institution, under a board of directors consisting of the Governor and other State officials of the executive department and a number of gentlemen of the highest character and standing residing in different portions of the State.   The defendant, W. C. Kilvington, is the superintendent, and has immediate charge of the institution.   The State contributes liberally to its support year after year, and reports of the operations are made to the General Assembly at its stated sessions, and that body exercises a supervisory jurisdiction over it.   There have been committed to the care of the institution, since its opening, 1,408 persons, boys and girls, white and black. Of this number, 821 have been discharged, and 647 are now in the institution.   They are instructed in the trades as well as in the common branches of education.   It is not a penal nor altogether a reformatory institution, but is rather a place of refuge and school for homeless, penniless children, where they may be received and cared for, taught the different grades of a common school education, and trained in useful trades and branches of industry. The objects and purposes of the institution are best illustrated by the provisions of the Acts of the General Assembly, the latest being the Acts of 1891, Chapter 195 (Shannon's Code, §§ 4418 to 4433). The Act is entitled, and provides as follows, among other things:

"AN ACT for the benefit and protection of orphan, helpless, wayward, and abandoned children.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That any Judge or Chairman of a County Court, in this State, may cause to be brought before the Court any child between the age of eight and eighteen years that comes within any of the following descriptions, to wit: (1) That is begging to receive alms, whether openly or under pretense of selling, or offering for sale, anything, but not when the selling is *bona fide,* and not a pretense or cover for begging or receiving alms; (2) that is found wandering, and not having any home or settled place of abode; (3) that has no proper or sufficient guardianship to care for its physical, moral, and mental welfare, to at least such a degree as will probably save the child from pauperism, lewdness, and crime; (4) that is found destitute, either being an orphan or having a parent or parents undergoing imprisonment or confinement in a lunatic asylum, or where both parents are habitual drunkards, or where the only living parent is a habitual drunkard, and any child of such parent is not properly supported and controlled; (5) that frequents the company of lewd, wanton, or lascivious persons in speech or behavior, or notorious resorts of bad character; (6) that is found wandering in streets, alleys, or public places, with no means of support; (7) that has been abandoned in any way by parent or parents, or guardian, and has no means

of support, and with idle habits. And if it shall appear to the satisfaction of the said County Court that it would be manifestly for the interest of said child that it be committed to the Tennessee Industrial School, the Court will so order and send the child to said school, to be held by it under the charter and by-laws of said school.

"SEC. 2. *Be it further enacted,* That said industrial school may receive any child placed in its care and .keeping by its parent or parents, without the authority of any Court, and said school may keep and care for said child until it is twenty-one years of age, unless sooner taken away by the request of of its parent or parents, and released under the authority and by-laws of said school.

"SEC. 3. *Be it further enacted,* That the parent or parents may, and guardians other than parents must, invoke the authority of the County Court when they desire to commit any child to said school, on the ground that said parent or parents or guardians, or those having the child in charge, are unable to control the child; and this is hereby made a ground for committing a child to said school; *Provided,* It appear to the satisfaction of the Court or officer before whom said child is brought for commitment, that the commitment would probably be for the child's interest and welfare. But said industrial school shall not receive any child under this or the preceding section until its parent or parents or guardians, or persons having the child in charge, shall

satisfactorily agree with the officers of said school so supply sufficient funds for the maintenance of the child therein during its stay, and shall further agree to abide by all the rules, by-laws, and requirements of said industrial school.

"SEC. 4. *Be it further enacted*, That no child shall be committed to said school or received or retained therein on any ground other than the one single ground that the interest and welfare of the child will be thereby probably promoted.

"SEC. 5. *Be it further enacted*, That from the time of the lawful reception of any child into the school, and during its stay, the school shall have exclusive care, custody, and control of said child until it shall be discharged therefrom.

"SEC. 6. *Be it further enacted*, That no child under eight or over sixteen years of age in case of females, and under eight and over eighteen in case of males, shall be committed to said school.

"SEC. 7. *Be it further enacted*, That whenever any child shall be committed to said school as aforesaid, the effect of that commitment shall be to commit the child until he or she is twenty-one years of age, unless sooner discharged by the officers of said school pursuant to its by-laws, who shall have authority to sooner discharge any child from the school, whenever, in their judgment, it shall be for the interest of the child to do so.

"SEC. 8. *Be it further enacted*, That the officers and managers of said school shall receive and take

into it all children committed thereto by competent authority as aforesaid, and shall cause all children in such school to be instructed in such branches of useful knowledge as may be suited to their years and capacities, and shall cause the girls to be especially taught domestic vocations, such as sewing, mending, knitting, and housekeeping in all its departments. The boys shall be taught such useful trades as the board may direct, and all children in said school shall be taught according to the course of the common public schools in this State.

"SEC. 9. *Be it further enacted*, That any commitment under the provisions of this Act shall be full, sufficient, and competent authority to the officers and agents of said school for the detention and keeping of any child therein."

Hon. Jno. C. Ferriss, Judge of the County Court of Davidson County, caused this child to be taken from the custody of her grandmother, and committed her to the institution under the following paper:

"*Office of Judge of the County Court, Davidson County, Nashville, Tenn., July 26, 1897.*—MR. W. C. KILVINGTON, Supt. Tennessee Industrial School—DEAR SIR: Please receive Lyndall Williams within the school as the law directs. The charges against her are these . . . JNO. C. FERRISS, *County Judge.*"

It is admitted by the defendant that the committal was informal and summary, and without the issuance of any warrant or any formal investigation. The County Judge, who was examined as a witness,

states that he based his action principally upon facts known to himself, and upon information derived from others. Clearly, the Act of the Legislature contemplates a proceeding in open Court and a proper investigation upon which to base any committal, and the action of the County Judge in this case, though shown by the records to have been prompted by the best of motives, was irregular, and not according to law. A child cannot arbitrarily be taken from its parents, or custodians selected by its parents; and if proper application had been made for the release of the child before she reached the institution, it would have been granted. Here we have a case, however, where a child of tender years is an inmate of a State institution having for its purpose the charitable ends set forth in the Act regulating it, and sought to be taken therefrom by its mother.

It is held in *People* v. *New York Juvenile Asylum*, 12 Abb. Pr. Repts., 92, that when a child has been committed to a public institution as prescribed by statute, the Court will not, on proceedings by *habeas corpus* instituted by the parent to recover the child, inquire into the regularity, legality, or sufficiency of the proceedings before the magistrate which resulted in such committal. Church on Habeas Corpus, Sec. 442. The writ of *habeas corpus* is intended to procure and preserve the personal liberty of the citizen, and not to enforce a parent's right to property either in the person or services of the child. *Lee* v. *White*, 4 Sneed, 73. The Court will not, in such

cases, be controlled alone by the wishes of the child, nor by the ties of the parental relation, but will hold the welfare of the child superior to both the wishes of the child and the affections of such parents as cannot show themselves qualified to properly care for, educate, and train them. *State* v. *Payne*, 4 Hum., 523; Church on Habeas Corpus, Sec. 441 *et seq.; Ward* v. *Roper*, 7 Hum., 111.

Due regard must in every instance be paid to the rights of parents and of the child, but this rule must be enforced and construed when the child is brought into Court in the interest and for the benefit of the child; and when the detention is manifestly for the welfare of the child, it will be allowed and required to remain in the institution. *Ballinger* v. *McLain*, 54 Ga., 159; *People* v. *N. Y. Catholic Protectory*, 38 Hun, 127; *Commonwealth* v. *St. John Orphan Asylum*, 9 Phila., 571; *Farnham* v. *Pierce*, 141 Mass., 203; *In re Ferrier*, 42 Am. Rep., 10; *Milwaukee Industrial School* v. *Milwaukee Co.*, 40 Wis., 328; *Ex parte Crown*, 4 Wharton (Pa.), 9.

In these cases it is said, in substance: Such statutes are not penal, and the commitment is not in the nature of punishment. Such an institution is a house of refuge, a school—not a prison. The object is the upbuilding of the inmate by industrial training, by education, and instilling principles of morality and religion, and, above all, by separating them from the corrupting influences of improper associates.

State, *ex rel.*, *v.* Kilvington.

In this case it clearly appears that the mother and grandmother of this girl are both of ill repute; that they are now living in disreputable localities, and the girl, if restored to them or either of them, will be subjected to and surrounded by evil associates and corrupting influences.

Ordinarily the parent is entitled to the custody, companionship, and care of the child, and should not be deprived thereof except by due process of law. It is a natural right, but not an inalienable one. The parents are trusted with the custody of the child upon the idea that under the instincts of parental devotion it is best for the child. But when it clearly appears that it is not for the welfare of the State or the child that it should be taken from such an institution, the Court will not so direct, but will leave the child where its safety, purity, and well-being requires. And this without regard to the informalities of its commitment, the Court, for the time being, acting as its custodian. The right of the parent is sufficiently guarded by permitting the parent on *habeas corpus* proceedings to inquire into the propriety or necessity of the detention, and to have the custody restored, upon a proper showing that he or she is competent, and a proper person to have charge of the child. In such case, the custody of the child will not be denied them. It is said that under Section 6 of the Act regulating the school, no child under eight years of age shall be committed to it, and it is insisted, for this reason,

State, *ex rel.*, *v.* Kilvington.

that the child must be discharged. The original Act of 1885 fixed the limit at six years, and not eight, as fixed by the Act of 1891. In both Acts we think the limitation was provided to protect the institution, and we cannot enforce it so as to release from the institution and restore to improper hands a child whose welfare would not be subserved by such release, and whose age is, to say the least, uncertain under the proof.

The Court below, after hearing the proof, refused to deliver up the child to the custody of its mother or grandmother, and remanded her to the institution, with liberty to the mother to visit her on Wednesday of each week, and, under the record as we find it, we think this was proper, and we affirm the order and judgment of the Court below, dismissing the petition at petitioner's cost.