## POWELL et al. v. Powell.—255 S. W. (2d) 717.

Middle Section. October 30, 1952.

Petition for Certiorari denied by Supreme Court, February 6, 1953.

Berry C. Williams, of Fayetteville, for plaintiff.

Cecil D. Branstetter, of Nashville, for defendant.

HOWELL, J. In this case the petitioner Betty B. Wright seeks the custody of two minor children of her

daughter Lois W. Powell who died in May 1951. Lois W. Powell had been granted a divorce from her husband Ernest T. Powell in June 1948, on the grounds of wilful and malicious desertion for more than two whole years and had been given the custody and control of the children. The case remained in the Circuit Court of Lincoln County. One of the children was born in July 1943 and the other in September 1946. At the time of the births of the children, the mother Lois W. Powell was living with her mother, the petitioner Betty B. Wright, and died there in May 1951. The children have always, except for visits to their paternal grandparents in Nashville, lived with the petitioner, their maternal grandmother. After being discharged from the Army, the father Ernest T. Powell went to California to live in 1946, and has lived there since.

The father Ernest T. Powell and the paternal grandparents, Thomas Powell and his wife, filed answers and asked that the custody of the children be given to Ernest T. Powell.

Upon the hearing the trial Judge granted the prayers of the petition and awarded the sole and exclusive custody of the children to the petitioner, their maternal grandmother.

The defendants have appealed to this Court and have assigned as error that there is no evidence to support the judgment of the Court and that the Court erred in finding that it was for the best interest of the children that their permanent care and custody be awarded their maternal grandmother, Betty B. Wright.

In disposing of the case the trial Judge filed a full finding of facts and stated his conclusions as follows:

"That although this court recognizes that the general rule of law gives a parent a superior right

to the custody of children when the contest of custody is with the maternal grandparents still the welfare of the child involved overrides any general rule of law; that although Ernest T. Powell, the father of the children, or Mr. and Mrs. Thomas Powell of Nashville, the paternal grandparents of the children, are apparently all good people and would and could provide a good home for the children, still also would the maternal grandmother, Betty B. Wright provide a good home for the children, and her character and reputation also is outstanding among both white and colored people in the community; that although Betty B. Wright is of advanced age she is physically well and strong and is financially able to provide for the children. She owns a large house on Cherokee Avenue which is perhaps better than the average colored home in Fayetteville, and, in addition, has two rental houses from which she derives monthly income, and her two children contribute regularly making her total income $135 per month which she can use to rear the two grandchildren. But more important than this is the fact that from the entire record and proceedings in this case it appears that in actuality Betty B. Wright has been the mother of these two children ever since they were born. She apparently has given them as much, if not more, care and attention as any parent would give their own children looking after them while their mother worked.

" 'That it appears that the father, Ernest T. Powell, the defendant, does in fact love and care for his children and desires to support them but it also appears that he has been exceedingly remiss or

lacking in diligence in caring for them, considering the fact that by his own proof he has not seen his children since he left to go to California and has never seen the youngest child. While the father may well be a good man and may well be able financially to provide the children with plenty of the material things of life, still it seems to me that any father could have seen, visited, or in some way done something for the children he loved. This father has not done so, and whatever may have been his difficulties with his wife, the mother of the children, still, considering what is the best for the children themselves—and that is the main thing we are here deciding—it appears to me that it not only would perhaps be wrong but would actually be a grave injustice to the two children to uproot them from the only home and 'mother' they have ever known, from the place they have lived and played with their colored cousins, from the environment from which they have been apparently happy and well fed and clothed and kept clean, according to their appearance here in court today—and send them to live in a strange place, a strange state, among comparatively strange people, even though that person might be their father, or send them to live with their paternal grandparents in Nashville. For, in fact, this court must recognize that these people would be strangers to the children.

" 'Furthermore, I desire that the record show that from the testimony of the witnesses for the defendant it never was clearly shown that the children, if taken from the custody of the petitioner, would live with the father in California or with the paternal grandparents in Nashville. If it should be

the intent, admitted or otherwise, of the father to have the children live with his parents in Nashville, the thought occurs to me that they as well as the petitioner are of advanced years. They might be able to give the children a finer home but it is my belief that they could not give the children any more individual love and care and attention than has this old colored woman who had reared these two grandchildren of hers.

" 'Let the injunction become perpetual and vest the sole and exclusive custody and control of the children in the maternal grandmother, Betty B. Wright.' "

We have read the entire record and considered the briefs and argument of counsel and are of the opinion that the trial judge did not err in his disposition of the case but acted for the best interests of these little children.

In the case of State ex rel. Daugherty v. Rose, 167 Tenn. 489, 71 S. W. (2d) 685, 686, Judge Cook in delivering the opinion of the Court said:

"When such proceedings involve the custody of children, they are not decided according to the strict legal right of the petitioner but are dependent upon the child's welfare. By the common law, doubtless re-enforced by the proprietary theory of the Roman law, the father was the legal custodian of his child and could reclaim it regardless of the child's welfare or interest, but the common law has yielded to human considerations, so that now cases are not decided according to the strict legal right of the petitioning parent, but according to the best interest of the child. State [ex rel. Paine] v. Paine, 4 Humph.

[523] 529; State [ex rel. Bethel] v. Kilvington, 100 Tenn. 227, 45 S. W. 433, 41 L. R. A. 284; Kenner v. Kenner, 139 Tenn. [211] 221, 201 S. W. 779, L. R. A. 1918E, 587.

"We have considered the evidence upon which the trial judge refused to sustain relator's claim to custody of the child and upon which he rested the conclusion that it was against the interest and well-being of the relator's son, Richard Daugherty, aged eight years, to send him away from a secure environment where he is well cared for and carefully nurtured to Illinois among strangers, in custody of his father, who lost control by cruelty to the mother and child, and neglected the child until he commenced this proceeding."

In the case of Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S. W. (2d) 558, 560, the Supreme Court said:

"We will now discuss the legal principles governing the case. Upon the principles of the common law, the father had the exclusive and legal right to the custody and services of his minor child. This was said to be his natural right, even against the mother. State [ex rel. Paine] v. Paine, 4 Humph. (23 Tenn.) 523.

"But under modern law there is no absolute right in the parent to the custody of his own child. The court will hold the welfare of the child superior to the affections of such parents as cannot show themselves qualified to properly care for, educate, and train them. State [ex rel. Bethel] v. Kilvington, 100 Tenn. [227] 234, 235, 45 S. W. 433, 41 L. R. A. 284.

"Carrying out his enlightened, human consideration this court denied to a father residing in another state the custody of his eight year old son under evidence showing that the father had lost his custody by cruelty to mother and child, and that the child was well taken care of in Tennessee. State ex rel. v. Rose, 167 Tenn. 489, 71 S. W. (2d) 685."

All the parties to this proceeding appear from this record to be fine and substantial colored people and it appears that the children would be well raised and cared for by either the father and his parents or the maternal grandmother. However, considering the fact that the father lives in California, is not married and would have to leave the children when he is at work with people who are total strangers to them, we find that the trial Judge made the disposition of the case which is for the best interests of these two little children.

The assignments of error are overruled and the judgment of the Circuit Court is affirmed. The defendant will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.