**Audrey Vanhuss Medearis HALL**

v.

**Robert HONEYCUTT and Juanita Shepard Honeycutt.**

Court of Appeals of Tennessee, Eastern Section.

June 20, 1972.

Certiorari Denied by Supreme Court Nov. 6, 1972.

Lodge Evans, Elizabethton, for appellant.

Robert E. Banks, Charles Crockett, Elizabethtown, for appellees.

## OPINION

COOPER, Presiding Judge (E. S.).

Audrey Vanhuss Medearis, now Hall, has appealed from a decree of the Circuit Court of Carter County granting primary custody of her son, Jeffrey Medearis, to Robert Honeycutt and wife, Juanita Honeycutt. Mrs. Hall was granted specified rights of visitation, including having her son in her home in North Carolina a total of thirty one days per year. Mrs. Hall questions (1) the jurisdiction of the court to decree custody, (2) the propriety of the court's action in granting custody to appellees, who are not related by blood or marriage to appellant or the child, (3) the refusal of the trial judge to talk with Jeffrey before rendering his decision, and (4) the entry of an order in the trial court requiring appellant to make child support payments "in keeping with her means and ability to pay."

The evidence shows Jeffrey Medearis was born to appellant on April 19, 1964, in Elizabethton, Tennessee. At the time of conception of the child, appellant was married to Hal Ben Medearis. Mr. Medearis filed suit for divorce in the Circuit Court of Carter County and, among other charges, put in issue the paternity of Jeffrey. On trial, Mr. Medearis was granted a divorce on the ground of "cruel and inhuman treatment" and was given custody of Robin Medearis, the young daughter of the parties. Blood tests made after the birth of Jeffrey revealed Mr. Medearis could not be the father; consequently, no order regarding Jeffrey's custody was made in the divorce decree, and Jeffrey was left in custody of appellant.

On May 9, 1965, when Jeffrey was approximately thirteen months of age, appellant left Jeffrey with the appellees, with the understanding that appellant would pay $12.50 per week for Jeffrey's care. Appellant made payments for approximately two months then notified appellees she was no longer able to make the support payments. Since that time appellant has made no material contribution for the support of her son, but has visited him at irregular intervals.

On May 11, 1967, appellees, having had physical custody of Jeffrey Medearis for

two years, filed a petition in the Circuit Court of Carter County seeking to adopt Jeffrey. Appellant filed a demurrer and answer, putting in issue the allegations of consent and the suitability of the appellees to adopt the child. Appellees then filed a supplemental petition charging that appellant had abandoned Jeffrey, and that her consent to the adoption was not necessary.

No action was taken by either party to prosecute the adoption case, or to change the physical custody of Jeffrey until October 29, 1971. At that time, under the pretext of taking Jeffrey to Elizabethton, Tennessee, to purchase Halloween gifts, appellant took Jeffrey to Hickory, North Carolina and announced her intention to keep the child with her.

Appellees filed a Habeas Corpus petition in the Superior Court of Carawba County, North Carolina in an effort to regain custody of Jeffrey. On hearing of the petition, the court declined to assume jurisdiction of the issue of custody, and ordered appellant to take Jeffrey back to Tennessee and adjudicate the issue of custody in the Adoption Petition then pending in the Circuit Court of Carter County.

Thereafter, on December 1, 1971, appellant filed a petition in the adoption proceeding seeking the dismissal of the adoption petition on the ground it had not been prosecuted to completion within the two year period specified by statute, and seeking to have the court adjudicate that she was entitled to have custody of Jeffrey.

Appellees filed an answer to the new petition, averring the delay in prosecution of the adoption was occasioned by agreement of the parties to leave custody in status quo. Appellees also put in issue the fitness of appellant to have custody of Jeffrey and asked the court to decree custody to them in the event the court dismissed the adoption petition.

On the trial, which was held on the 13th day of December, 1971, the adoption petition was dismissed for failure to prosecute the adoption to completion within two years from the date of filing of the petition. (T.C.A. 36–124). The court then heard evidence by oral testimony on the issue of custody, with the result that primary custody of Jeffrey was awarded appellees.

Appellant insists "the trial court lost jurisdiction to adjudicate custody of the child to appellees when he dismissed the adoption petition, and when there was no further pleading before the court charging that the child was an abandoned and neglected child." We find no merit in this insistence. T.C.A. 36–123 provides expressly that " * * * when a petition [for adoption] is dismissed, non-suited, or withdrawn, *the child shall remain a ward of the court with jurisdiction to adjudicate the child's guardianship according to the best interest of the child.*" (emphasis supplied). Then too, the dismissal of the adoption proceeding left pending the custody petition filed by appellant, which, of itself would give the trial court jurisdiction to try the issue of custody.

Appellant has filed six assignments of error in which she takes issue with specific findings or specific statements by the trial judge relative to the issue of custody. In substance these assignments when considered collectively present the question: Who is entitled to custody of Jeffrey?

The right of a parent to the custody of her child is paramount to that of an unrelated third party, other considerations being equal. Stubblefield v. State ex rel. Fjelstad, 171 Tenn. 580, 106 S.W.2d 558; Dunavant v. Dunavant, 31 Tenn.App. 634, 219 S.W.2d 910. However, the right to custody, though paramount, is not absolute and yields when the interest of the child demands it. See Smith v. Smith, 188 Tenn. 430, 220 S.W.2d 627, wherein it is stated that:

"Under modern law it is universally held that the parent has no absolute

right to the custody of his own child. The courts uniformly have held that the question is the welfare of the child. State v. Kilvington, 100 Tenn. 227, 234, 45 S.W. 433, 41 L.R.A. 284; Baskette v. Streight, 106 Tenn. 549, 62 S.W. 142; State ex rel. v. West, 139 Tenn. 522, 201 S.W. 743, Ann.Cas.1918D, 749; in re Knott, 138 Tenn. 349, 197 S.W. 1097; Stubblefield v. State ex rel., 171 Tenn. 580, 106 S.W.2d 558.

"In other words, in all of these custody or adoption cases involving small children, the rights of the parties, adult parties that is, applying for the custody of these children, must be relegated to the background and subordinated to what is considered for the best interest of the child."

As heretofore noted, appellant left Jeffrey with appellees on May 9, 1965, when Jeffrey was approximately thirteen months old, and the child had been with the appellees since that time.

The trial judge found, and we concur in his finding, that the appellees have taken excellent care of Jeffrey and that Jeffrey is "a happy, well-adjusted, normal child in the home of Mr. and Mrs. Honeycutt; that [Jeffrey is] getting along well in school; and [is] receiving excellent care, attention and moral training from Mr. and Mrs. Honeycutt." We also concur in the trial judge's finding "that except for some insignificant amounts which the [appellant] may have spent for clothing and some insignificant amount of money which the [appellant] may have given directly to the child that Mr. and Mrs. Honeycutt fully supported [Jeffrey] for the six and one-half years that [he has] lived in their home, exclusive of the first two months."

In contrast, during the same six and one-half year period, appellant showed no inclination to accept any responsibility for the care and training of her son, not even to pay a part of the cost of his support, though she has been financially able to do so for several years. The only show of interest by the appellant in the welfare and development of her son were her irregular and infrequent visits to the home of appellees and her taking Jeffrey from appellees' home in October, 1971.

For the future, the evidence shows the home offered by each of the parties is adequate to meet the physical needs of Jeffrey. There is some question, however, as to the supervision of Jeffrey in the home of appellant as appellant works the third shift and her husband works a rotating shift schedule. The evidence also shows that each of the parties is financially able to support Jeffrey. Each of the parties now has a reputation for good character in the community where they live, though it must be admitted that appellant's reputation has been acquired since her marriage in 1968 to Mr. Hall. The key differences between the home offered Jeffrey by appellees and the home offered by appellants, as we view the evidence, is (1) the proven desire and ability of the appellees to assume the responsibility for the care and training of Jeffrey, (2) Jeffrey's proven development while under the care of appellees and, more significantly, (3) the fact that Jeffrey has known only the home of appellees and has looked only to them for comfort and protection.

Appellant now professes to have the desire and ability to accept the responsibility of rearing Jeffrey. This may be so, but desire and ability alone are not enough to offset the proven performance of the appellees, nor to overcome the trauma necessarily attendant to taking a seven year old boy away from the only home and the only parents he has ever known.

The trial judge concluded it would be in Jeffrey's best interest to leave him with the appellees, who have done so well for him in the past, and to permit Jeffrey to

be with and gradually learn to know and to love his natural mother. Faced with the past performance of appellant, or rather lack of it, and the trauma necessarily attendant to a sudden change of custody, we can not say the trial judge erred in continuing a custody arrangement that has proven to be beneficial to Jeffrey.

The record shows the trial judge did not talk with Jeffrey before making a decision on the issue of custody. Appellant insists this was prejudicial error. Considering Jeffrey's age, we see no error, prejudicial or otherwise, in the refusal of the trial judge to discuss the issue of custody with Jeffrey.

In the final assignment of error, appellant takes issue with the supplemental decree of the trial judge requiring her to make "a regular monthly contribution to [Jeffrey], in keeping with her means and ability to pay." We agree with appellant that the order has no validity, but do so on the basis that the payments to be made by appellant are too indefinite to be enforced. Since the cost of future support of Jeffrey was not an issue on the trial, there is no evidence in the record which would enable this court to make a definite award of child support to be paid by appellant.

The decree of the trial judge will be amended to strike from the supplemental order of the trial judge the requirement that appellant make regular monthly contributions for the support of Jeffrey. As amended, the decree and supplemental decree of the trial judge are affirmed, and the cause is remanded to the trial court generally and specifically for enforcement of its decree as amended. Costs incident to the appeal are adjudged against the appellant, Audrey Medearis Hall, and her surety.

PARROTT, and SANDERS, JJ., concur.