IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2004 Session

# LINDA C. GORRELL v. TYREE B. HARRIS, IV

Appeal from the Juvenile Court for Davidson County
No. 9619-27809     Max D. Fagan, Judge

No. M2003-00629-COA-R3-JV – **Filed October 15, 2004**

This is a child support modification case. The child involved was born out of wedlock to the parties on June 13, 1996. Mother brought suit in the Juvenile court of Davidson County in July of 1996 seeking to establish paternity of the father and to establish child support. Both parties were represented by counsel, and on May 30, 1997, the juvenile court entered an Order of Compromise and Dismissal. The parties settled the case by Settlement Agreement under which Mr. Harris agreed to pay to Ms. Clark (now Gorrell) the sum of $20,000 cash for any and all claims against Mr. Harris through June 30 of 1998, including her child support claims as to the minor child. From June 13, 1998 forward, Mr. Harris agreed to pay $12,000 per year as child support together with medical insurance until the child reached age 18. On February 23, 2001, Mother filed a Petition to Modify the child support in order to bring it in compliance with Child Support Guidelines. The trial court held the Settlement Agreement to be void and set prospective child support but declined to either award retroactive child support or to order an upward deviation in child support because of failure of the father to visit the child. We affirm the ruling of the trial court that the Settlement Agreement is void, modify prospective child support, reverse the trial court on retroactive child support, deny an upward deviation as to retroactive support, but grant such deviation as to future support. The case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed in Part, Modified in Part, and Reversed in Part**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and R.E. LEE DAVIES, SP. J., joined.

George Ellis Copple, Jr., Nashville, Tennessee, for the appellant, Linda C. Gorrell.

Alfred H. Knight, Katherine A. Brown, William R. Willis, Jr. and Alan Dale Johnson, Nashville, Tennessee, for the appellee, Tyree B. Harris, IV.

## OPINION

Linda C. Clark (now Gorrell) and Tyree B. Harris, IV had an intimate relationship to which a child was born out of wedlock on June 13, 1996. Gorrell brought suit to legally establish the paternity of Harris in the Juvenile Court of Davidson County in July of 1996. Both parties were represented by counsel, and a Contract and Settlement Agreement prepared by counsel was agreed to by the parties. Pursuant thereto, an Order was entered by the juvenile court on May 30, 1997, which provided:

> It appearing to the Court, as evidenced by the signatures of counsel of record for the respective parties herein, that all matters and things in controversy by and between the Plaintiff, Linda Sue Clark, and the Defendant, Tyree B. Harris, IV, in this case have been fully and finally compromised and settled;
>
> **IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that all prior restraining orders in this case are dissolved and set aside, that this cause is hereby expressly dismissed and that all of the statutory costs of this cause shall be and are hereby taxed against the Defendant, Tyree B. Harris, IV, for which execution may issue, if necessary, but in no event shall there be an award of discretionary costs to or on behalf of either of the parties herein.
>
> Pursuant to T.C.A. § 37-1-107, this Order becomes the final judgment of the Juvenile Court if an appeal is not filed within five days, excluding Saturdays, Sundays, and legal holidays, from the date this Order is entered. This Order may be appealed to the Juvenile Court by filing a request for rehearing with the Juvenile Court Clerk. This Order shall be obeyed unless or until the Judge rules otherwise. ANY FAILURE TO COMPLY WITH THIS ORDER IS PUNISHABLE BY CONTEMPT, FOR WHICH THE PENALTIES MAY INCLUDE A FINE AND/OR IMPRISONMENT.
>
> **ENTERED** this _30_ day of May, 1997.

This Order was signed by Juvenile Judge Andrew Shookoff and entered of record.

The Agreement was never approved by the trial court and, as far as the record shows, was never even submitted to the trial court. Under the Agreement, Clark (Gorrell) was to have primary custody of the minor child, and Harris was to have reasonable visitation. The Agreement further provided:

> V.
>
> On the date of the execution of this Contract and Settlement Agreement, Mr. Harris shall pay directly to Ms. Clark the sum of Twenty Thousand Dollars ($20,000.00) and by its receipt Ms. Clark expressly agrees and acknowledges that such consideration is paid, conveyed and accepted in full settlement of any and all claims, whether contractual or tortious, which Ms. Clark may have as and against Mr. Harris as of this date arising out of the subject matter of this instrument and extends

to, applies to, covers and includes all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability as well as the consequences thereof whether or not ascertainable at the time of the execution of this instrument as well as those now disclosed and known to exist and further expressly agrees and acknowledges that such consideration is likewise paid, conveyed and accepted in full settlement as and for the prospective support and maintenance of Sydney Tyree Harris Clark, the minor child of Ms. Clark and Mr. Harris, through 13 June 1998, except as otherwise provided herein.

VI.

For so long as Ms. Clark shall be the primary physical custodian of Sydney Tyree Harris Clark, the minor child of Ms. Clark and Mr. Harris, Mr. Harris expressly agrees that on or before 13 June 1998 and on or before that same day of each succeeding calendar year through the year 2013 or until the death of Mr. Harris, the marriage of Mr. Harris to Ms. Clark, the death of Sydney Tyree Harris Clark, the minor child of Ms. Clark and Mr. Harris, or until Sydney Tyree Harris Clark, the minor child of Ms. Clark and Mr. Harris, is adopted by a third party, whichever event shall first occur, Mr. Harris shall pay to Ms. Clark the sum of Twelve Thousand Dollars ($12,000.00) as and for the prospective annual support and maintenance for the minor child, Sydney Tyree Harris Clark.

The Agreement contained other provisions obligating Harris to pay medical insurance and maintain a $250,000 life insurance policy on his life to be used for the use and benefit of the minor child.

On February 23, 2001, Gorrell filed a Petition acknowledging the execution of the Agreement of May 13, 1997, and the Order of the juvenile court of May 30, 1997, and then asserts:

4. Petitioner now brings this action to modify the previous $12,000 per year child support so as to bring it into line with the requirements of the Tennessee Child Support Guidelines, based on respondent's current income.

5. Specifically, petitioner alleges that respondent has an income in excess of $150,000 per year, although petitioner does not know precisely respondent's average income and will require financial documentation to prove respondent's relevant average monthly income in order to calculate the proper child support. Petitioner believes and alleges that respondent's income is in excess of $150,000 per year, i.e. in excess of an average of $12,500 per month, and accordingly his child support payments for one child under Tennessee Child Support Guidelines would be in excess of $1,796 per month.

6. Since respondent does not visit with the minor child, petitioner is entitled to an upward deviation in the support to be awarded under the Child Support Guidelines, which provide in pertinent part as follows: "Factors justifying upward

adjustment for support include . . . . less than average overnight visitation being exercised by the parent paying support . . . ." . Said provision in the Child Support Guidelines is attached hereto as Exhibit 2.

After the trial court denied a Motion to Dismiss, Harris, on September 19, 2001, filed an Answer and a cross-complaint relying primarily on the validity of the Settlement Agreement of May 13, 1997, and seeking to enjoin Gorrell from alleged personal harassment. On November 2, 2001, Gorrell filed an Amended Petition asserting that the private Agreement of May 13, 1997 was not approved by the trial judge and that no findings were made that the child support referred to in the Agreement was in accordance with the Tennessee Child Support Guidelines. This Amended Petition further sought an upward deviation in child support and retroactive support. On December 11, 2001, Harris answered the Amended Petition, essentially relying on the May 13, 1997 Agreement and otherwise denying the allegations of the Petition.

Final hearing was held December 28, 2001, before the Honorable Max D. Fagan, Juvenile Judge sitting by interchange. At the conclusion of all the proof, the trial court took the matter under advisement and, on January 14, 2002, entered a Final Order providing in pertinent part:

> The court finds that the previous agreement entered into by the parties does not bar this petition as *res judicata*. Therefore the petition to modify child support is considered in reference to the parties' respective situations in accordance with applicable statutes.
> The parties have had a contentious relationship for years, and it is clear that the animosity they share has made their dealings with each other considerably more difficult. The court finds that the father, Mr. Harris, has not exercised visitation with the minor child. However, this lack of visitation has been precipitated by the actions of the mother, Ms. Gorrell, in that she has threatened the father and otherwise harassed and antagonized him through various means, including contact with his employment which appears to be for the purpose of embarrassing and humiliating Mr. Harris.
> While the Petitioner has sought an upward deviation from the child support guidelines due to a lack of visitation, the court finds that the petitioner has directly contributed to the lack of visitation by her conduct toward the Respondent. The petitioner has threatened, harassed, and intimidated the Respondent by threatening to make accusations about him which would tarnish his reputation, even if unfounded. As a result, the court in its discretion finds that it would be unjust to order an upward deviation.
> The court finds that the respondent's average gross income over the years 1997 through 2000 has been one hundred thirty eight thousand six hundred thirty four dollars ($138,634.00). As such, the amount of child support pursuant to the child support guidelines would equal $1,671.00 per month, or an annual total of 20,052.00 per year. This amount is due and payable since the date of the filing of the petition in this cause, as the court finds that the Petitioner has received benefits under the

-4-

previous agreement which are not so equitably dissimilar to the above amount to merit a judgment beyond the date of filing.

The petition in this cause was filed on March 13, 2001. Therefore, the following tabulation should reflect the present payment accrual versus the payment history, to wit:

| Pmt. due | Amount Due |
|---|---|
| March 2001 | $1,671.00 |
| April 2001 | $1,671.00 |
| May 2001 | $1,671.00 |
| June 2001 | $1,671.00 |
| July 2001 | $1,671.00 |
| Aug. 2001 | $1,671.00 |
| Sept. 2001 | $1,671.00 |
| Oct. 2001 | $1,671.00 |
| Nov. 2001 | $1,671.00 |
| Dec. 2001 | $1,671.00 |
| Jan. 2002 | $1,671.00 |
| TOTAL | $18,381.00 |
| Payments Credited | ($15,000.00) |
| Net Arrearage | $ 3, 381.00 |

In addition to the child support and the arrearage which has accrued as outlined above, the court finds it appropriate for the Respondent to continue to cover the minor child on his medical insurance and for the parties to divide equally any co-payments and uninsured medical and dental expenses. The court finds that each party should alternate claiming the child for purposes of federal income taxes each year, with the Respondent claiming the child in odd numbered tax years and the Petitioner claiming the child in even numbered tax years. The court also finds that each party should be responsible for the payment of their own attorneys fees.

Finally, in considering the testimony and proof in this mater, the court finds that the Respondent has faithfully performed the obligations he assumed under the parties' prior agreement, and that the Petitioner has engaged in inappropriate conduct as set forth above. Therefore, the court finds it appropriate that the Petitioner be restrained and enjoined from coming about the Respondent at his home, place of employment or otherwise, and that she be prohibited from contacting the Respondent for the purpose of harassing, embarrassing, intimidating or threatening the Respondent, or for any other purpose except through counsel.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Respondent pay child support in the amount of $1,671.00 per month, beginning February 1, 2002. Said amount of child support may be paid annually in advance at the discretion of the Respondent. The Petitioner is granted a judgment for an accrued

arrearage in child support payments in the amount of $3,381.00, which shall be paid on or before August 1, 2002. The respondent shall maintain health insurance on the minor child, and the parties shall divide equally any co-payments or uninsured medical and dental expenses. Each party shall be responsible for their own attorney fees.

Following post-trial motions, the trial court modified its Final Order to provide:

The court finds that the previous agreement entered into by the parties is indeed void as against public policy, and as to future enforcement. The court, however, does not discount or ignore the benefits which have been provided to the Petitioner by the Respondent under the prior agreement. The court has considered those benefits in comparison to the benefits which would have accrued under the child support guidelines in determining the net resulting rights and responsibilities of the parties. As such, the court holds that the benefits which have actually been paid or provided by the Respondent to the Petitioner, conform economically to the benefits which would have accrued had the guidelines been followed in lieu of the parties' private agreement. As such, the court does not find it appropriate to make additional adjustments to the accrued benefits previously paid.

The Petitioner has requested that the arrearage award be clarified to explain the court's calculation and credit of $15,000.00 toward the Respondent's obligation. The court has determined that the proper guideline amount of support is $1,671.00 per month, based upon the Respondent's current annual income of approximately $138,634.00. The Respondent has historically paid an annual sum of $12,000.00 in June of each year, or an equivalent amount of $1,000.00 per month. Therefore, the court gives credit for $1,000.00/month for the months of March, April and May of 2001 (or an aggregate sum of $3,000.00 for those months). Thereafter, the Respondent paid another annual sum of $12,000.00 in June of 2001. The accrued benefit which should have been paid at a rate of $1,671.00 (from March of 2001 through January of 2002) totaled $18,381.00. The court gives the Respondent credit for the $3,000.00 paid for the months of March, April and May of 2001 plus the $12,000.00 paid in June of 2001 for a total credit of $15,000.

The Petitioner has requested an upward deviation in the amount of child support ordered, based upon the proof which showed that the Respondent has failed to exercise "standard" visitation. However the court finds that such a deviation, in this case, is inappropriate based upon the actions and misconduct of the Petitioner. Specifically, the unrebutted proof in this cause indicated that the Petitioner has threatened to accuse the Respondent of child abuse, even without a basis for such allegation, for the sole purpose of damaging the Respondent's personal and professional reputation. The Petitioner has exhibited a history of malicious conduct toward the Respondent, including damage to the Respondent's property, threats to and assault of the Respondent, harassment, fraud in the conception of the parties' minor child by asserting that the Petitioner was on birth control when indeed she had

discontinued the use of same without informing the Respondent, defamation of the Respondent by fax to his office and otherwise as evidenced by exhibit and testimony offered at the trial in this cause and otherwise. The Petitioner's conduct toward the Respondent in a consistently antagonistic manner over a period of years is a basis upon which the Respondent might reasonably believe that he would be subjected to an additional risk of defamation and false accusation(s) by the Petitioner if he did not attempt to minimize the provocation of the Petitioner's ire by distancing himself from her. Unfortunately, the Respondent's efforts at self preservation have resulted in his forfeiture of a relationship with his daughter. Because the Petitioner's conduct toward the Respondent has precipitated his lack of contact, the court finds it inappropriate to "reward" the Petitioner by an award of additional compensation through an upward deviation in the amount of child support ordered. The court further finds that the amount of child support ordered is sufficient to provide for the child's needs, as a result of the Respondent's income upon which such award is based, and upon the expenses which are incurred on behalf of the child by the Petitioner.

The parties have each incurred expenses in this litigation, including the cost of the fine representation afforded to each party by their respective counsel. Because of the nature of the dispute, including a consideration of the totality of the circumstances and proof presented in this cause, including those mentioned above, the court finds it appropriate for each party to bear the expense of their own attorney's fees.

Both parties timely appealed.

I.      The contract.

The record plainly shows that each of these parties was represented by competent counsel at the time and entered into the May 17, 1997 Contract and Settlement Agreement for the support of their minor child in the utmost of good faith. With equal clarity the record shows that, under the principles laid down in *Berryhill v. Rhodes*, 21 S.W.3d 188 (Tenn. 2000), the Agreement is void as against public policy.

The Child Support Guidelines have been in existence in Tennessee since long before the May 17, 1997 Agreement of the parties, and they have the force of law under a legislative mandate from which the courts are not authorized to deviate except in the manner that is allowed by the guidelines themselves. *Nash v. Mulle*, 846 S.W.2d 803 (Tenn. 1993); *Barnett v. Barnett*, 27 S.W.3d 904 (Tenn. 2000). Harris asserts that the Agreement between the parties was supported by adequate consideration and should be an enforceable contract as written, particularly since the decree of dismissal of the action in 1997 was based upon the existence of such contract. Relying on *Burton v. Burton*, 343 S.W.2d 867 (Tenn. 1961), Harris asserts that there is no allegation or fact showing fraud or mutual mistake and that, under such circumstances, the consent decree of dismissal cannot be successfully impeached. Harris further asserts:

> A decree is frequently made by consent of parties. In such a case, the court does not inquire into the merits or equities of the decree, nor whether it is sustained by the pleadings. The only questions for the court to determine are: 1) are the parties capable of binding themselves by consent; and 2) whether they have consented, or do now consent, to the proposed decree.
>
> *Gibson's Suits in Chancery*, Section 577 (4th Ed.).

All these assertions are in fact true, and no effort is made by Gorrell to state otherwise. If the case were to be determined as involving the parties to the Agreement, it appears that Harris would certainly prevail, as no basis exists in this record to impeach the Agreement as it relates to the rights of the parties thereto. Since the early common law, however, the state has stood in *parens patriae* of minor children within its borders. In the context of *habeas corpus*, the supreme court said:

> Under the change of government from a monarchy to a republic, the functions of parens patriae did not cease to exist. Such authority passed from the king to the government of the state or sovereign people, and it may be called into exercise by the Legislature, the representatives of the people, and delegated by the Legislature to other functionaries. *Ewell v. Sneed*, 136 Tenn. 602, 624, 191 S.W. 131; *Mormon Church Case*, 136 U.S. 1, 58, 10 Sup. Ct. 792, 34 L.Ed. 481, 496.
>
> . . . .
>
> As it affects the custody of infants, the writ of habeas corpus rests on the assumption of a right in the state, paramount to any parental or other claim, to dispose of such children as their best interests require. The legal rights of a parent are very gravely considered, but are not enforced to the disadvantage of the child. Such is the universal practice, and it has been followed in this jurisdiction from *State, ex rel. v. Paine, supra*, to *State ex rel. v. Kilvington*, 100 Tenn. 227, 45 S.W. 433, 41 L.R.A. 284.

*State, ex rel. Jones v. West*, 201 S.W. 743, 744 (Tenn. 1918).

At remote common law, a child born out of wedlock was, to a large measure, excluded from the scope of the state's *parens patriae* oversight. A father of such child had neither a right to custody of nor an obligation to provide support for such child. *State v. Boston*, 102 P.2d 889, 892 (Okla.Crim.App. 1940). The development of the law, both by statute and by common law, has been rapid and dramatic. Historically:

> At common law a child born out of wedlock was said to be *filius nullius*, the child of nobody, or *filius populi*, the child of the people. The putative father had neither rights nor obligations toward the child and was precluded from establishing

his paternity of the child in a legal action. *Ford v. Loeffler*, 363 So.2d 23, 24 (Fla. 3d DCA 1978). From a legal standpoint, such a child simply had no father or mother. 10 Am.Jur.2d § 8 at 848. But the common law has been abrogated by statute in most jurisdictions, affording rights both to the child and to the parents.

*In Re: Guardianship of D.A. McW.*, 429 So.2d 699, 702-703 (Fla.Dist.Ct.App. 1983).

In a decision strongly analogous to the case at bar, the Court of Appeals of Michigan expressed the law as it stands today. This case, *Sturak v. Ozomaro*, 606 N.W.2d 411 (Mich.Ct.App. 1999), involved a putative father who had fully performed a settlement agreement with the mother of the child, and thereafter, the mother, by petition to the court, sought to establish paternity and set child support both retroactively and in the future. The court, basing its action on both statutory grounds and on constitutional equal protection grounds, held:

> Only a child's adoption relieves the child's natural parents from their obligation to support the child. *Evink, supra* at 174, 542 N.W.2d 328. Furthermore, as the Court recognized in *Crego III, supra* at 295, 591 N.W.2d 277 illegitimate children have the same needs for support as other children. *Smith, supra*. As this Court concluded in *Crego III, supra* at 296-297, 591 N.W.2d 277 Crego II *supra* at 818-821, 573 N.W.2d 291 and *Dones, supra* at 676-679, 534 N.W.2d 221, denying plaintiff's son the opportunity to seek additional support constituted a denial of equal protection. See *Stanton, supra* at 146-148, 253 N.W.2d 114 (The Supreme Court in *Stanton* retroactively applied another Supreme Court decision that held unconstitutional a statutory provision that prevented certain agricultural employees from receiving worker's compensation on the basis that the statute denied these employees equal protection, and despite the defendants' arguments that they had relied financially on the unconstitutional statute.). We also acknowledge the state's interest in providing for the support and care of illegitimate children, *Crego III, supra* at 294, 591 N.W.2d 277 which interest is reflected in the announced public policy of this state to treat children born out of wedlock as no less deserving of support than those born in wedlock. *Smith, supra* at 289, 283 N.W.2d 725. Although defendant enjoys a vested contractual right that formed under §3, as a matter of public policy, the overriding interest of the illegitimate child must prevail when defendant's contractual right conflicts with the child's right to support, especially when the child's right to support is considered in conjunction with the state's interest in providing for these children.

*Sturak v. Ozomaro*, 606 N.W.2d 411, 420-421 (Mich.Ct.App. 1999).

In announcing the public policy of the State of Michigan to treat children born out of wedlock as no less deserving than those born in wedlock, the court observed:

This public interest is a longstanding one. In *Bowerman v. MacDonald*, 427 N.W.2d 477 (Mich.1988), the Supreme Court traced the history of the Paternity Act in Michigan:

> At common law, a father had no duty to care for his child born out of wedlock. In 1846, the Legislature enacted the Bastardy Act to define such a duty and provide a statutory mechanism by which he could be required to fulfill it. The act was said to have two purposes: to require the child's father to provide support, and to protect society from having to provide that support in his stead.

*Bowerman*, 427 N.W.2d at 479 (citations omitted).

That this equality of obligation to support applies with equal force in Tennessee is settled:

> The child support guidelines require a noncustodial parent to pay an amount of child support based on the noncustodial parent's net income and the number of children to be supported. *See* Tenn.Comp.R. & Regs. r. 1240-2-4-.03(5) (1994). They draw no distinction between children whose parents are or were married and those whose parents were never married. Thus, as we have held previously, the guidelines apply not only in divorce cases but also in proceedings in which one unmarried parent is seeking child support from the other. *See Shell v. Law*, 1997 WL 119581, at *2; *Barabas v. Rogers*, 868 S.W.2d 283, 288 n. 5 (Tenn.Ct.App. 1993); *Faircloth v. Locke*, No. 01A01-9010-GS-00376, 1991 WL 259478, at *3 (Tenn.Ct.App. Dec. 11, 1991) (No Tenn.R.App.P. 11 application filed).

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 249 (Tenn.Ct.App. 2000).

It is against this historical development of the law that the supreme court announced its decision in *Berryhill v. Rhodes*, 21 S.W.3d 188 (Tenn. 2000). Unquestionably, *Berryhill* controls the determination of the case at bar. Except insofar as Harris is entitled to credits against his support obligations of those amounts of money which he has paid under the July 17, 1997 Agreement, his liability for child support, both prospective and retroactive, is mandated by *Berryhill*. His reliance on and good faith performance of his obligation under the Agreement are ineffective to modify his support obligations under the guidelines.

In *Berryhill* it is provided:

> Although this Court has not specifically addressed the issue of the validity of a private agreement for payment of child support, other states that have considered the issue have found such agreements violate public policy. . . .

> Courts in several jurisdictions have found that a child's right to support cannot be bargained away by a parent to the child's detriment. . . .
>
> We find the holdings and reasoning of these courts to be persuasive. Tennessee's statutory provisions for the establishment of paternity and support and the Child Support Guidelines evince (sic) a policy that fathers will support their children. Private agreements used to circumvent the obligations set forth in the statutes and guidelines contravene that policy.

*Berryhill*, 21 S.W.3d at 191-192.

As in *Berryhill*, the Agreement in this case does not comply with Tennessee Code Annotated section 36-5-101(h) in that the Agreement is not approved by a court, is not incorporated in a court order and does not contain an acknowledgment that they may not alter the Agreement without court approval. In this case, the Agreement was not incorporated in the Final Order of the juvenile court nor specifically approved by that court. Instead, the Final Order provided: "It appearing to the Court, as evidenced by the signature of counsel of record for the respective parties herein, that all matters and things in controversy by and between [the parties] have been fully and finally compromised and settled." This language is not sufficient, even if Tennessee Code Annotated section 36-5-101(h) could be stretched to support a private agreement that is clearly contrary to the child support guidelines. *Berryhill*, 21 S.W.3d at 191.

II.     Retroactive support.

This issue, likewise, is foreclosed by *Berryhill.* The discussion in *Berryhill* leaves no room for the kind of discretion in the trial court that would allow for substantial deviation from the guidelines.

> The Court of Appeals in this case recognized the guidelines apply as a rebuttable presumption regarding the amount of child support to be paid. The court, however, stated that the presumption is not to be construed as an abrogation of this Court's statement in *Coleman v. Clay*, 805 S.W.2d 752, 755 (Tenn. 1991), that a court "has broad discretion to determine the amount of such a retroactive award." This Court acknowledged in *Coleman* that a father is responsible for the support of his child and that this obligation arises at the date of the child's birth. *Id.* at 754-55. This Court further stated that a juvenile court judge has broad discretion to determine the amount of such a retroactive award. *Id.* at 755.
>
> The Child Support Guidelines, however, were silent as to retroactive awards when this Court decided *Coleman*. Subsequent to the decision in *Coleman*, retroactivity provisions were added to the Child Support Guidelines. The specific inclusion of these provisions in 1994 limited the courts' discretion in setting amounts of child support. While the juvenile court continues to have discretion in making

awards of child support, that discretion must be exercised within the strictures of the Child Support Guidelines.

*Id.* at 192-193.

The trial court, in declining to set retroactive child support in conformity to the guidelines, held:

The court, however, does not discount or ignore the benefits which have been provided to the Petitioner by the Respondent under the prior agreement. The court has considered those benefits in comparison to the benefits which would have accrued under the child support guidelines in determining the net resulting rights and responsibilities of the parties. As such, the court holds that the benefits which have actually been paid or provided by the Respondent to the Petitioner, conform economically to the benefits which would have accrued had the guidelines been followed in lieu of the parties' private agreement. As such, the court does not find it appropriate to make additional adjustments to the accrued benefits previously paid.

First of all, the comparison of benefits under the Agreement with benefits under the guidelines clearly shows that the contractual benefits do not "conform economically to the benefits which would have accrued had the guidelines been followed in lieu of the parties' private agreement." By the trial court's own calculations, the contractual benefit is $1,000 per month while the benefits under the guidelines as set by the trial court's Order are $1,671 per month. *Berryhill* simply does not allow such deviation from the provisions of the child support guidelines and leaves very little discretion in either the trial court or the appellate courts. The trial court offered no other explanation that would support an allowable deviation. To the extent that *Coleman v. Clay* can be construed to the contrary, it is specifically repudiated by *Berryhill*.

III.     Calculations of prospective child support.

In setting child support prospectively to begin February 1, 2002, the trial court calculated the child support on a basis of the average gross income of Harris over the years 1997 through 2000 and established such average annual income at $138,634. This resulted in a monthly support obligation of $1,671. The trial court does not state nor does the record indicate any reason for calculating prospective child support on such a basis. On remand prospective child support will be calculated based on actual income in the year 2000.

It is well settled that child support guidelines have the force of law and must be followed.

Child Support Guidelines have the force of law. *Jahn v. Jahn*, 932 S.W.2d 939, 943 (Tenn.Ct.App. 1996). Any deviation from the guidelines must be explicitly stated on the record. Tenn. Code Ann. § 36-5-101(e)(1). If the guidelines are not followed, the court must make written specific findings that their application would

-12-

be unjust or inappropriate, stating the amount that should be awarded under the guidelines, along with justification for the deviation. Tenn. Comp. R. & Regs. Ch. 1240-2-4-.02(7).

*State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn.Ct.App. 2001).

IV.     Child support obligation retroactively from the birth of the child until the trial court Order of January 14, 2002.

The retroactive support obligation must be "calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party." Tenn. Comp. R. & Regs. R. 1240-2-4-.04(1)(e)(1997). In this case, the proof clearly shows that the child was born in July 1996 and that the income of Mr. Harris at that time was somewhat less than the average income that would result from calculating his gross income according to his experience in 1999 and 2000. Thus, as was the case in *Berryhill*, he has successfully rebutted the presumption set forth in the Rule, and, on remand, his obligation for retroactive support will be calculated on his actual gross income for each of the years 1996 through 1999.

V.      Upward deviation in child support because of failure to visit.

The child support guidelines provide as follows:

**1240-2-4-.04 CRITERIA FOR DEVIATION FROM GUIDELINES**
(1) . . . the court shall increase the award calculated in Rule 1240-2-4-.03 for the following reasons;

. . . .

>        (b)     if the child(ren) are not staying overnight with the obligor for the average visitation period of every other weekend from Friday evening until Sunday evening, two weeks during the summer, and two weeks during holiday periods throughout the year, then an amount shall be added to the percentage calculated in the above rule to compensate the obligee for the cost of providing care for the child(ren), for the amount of time during the average visitation period that the child(ren) is/are not with the obligor.

Tenn. Comp. R. & Regs. R. 1240-2-4-.04(1)(b)(1997).

This part of the case is the most difficult to resolve. The trial court was not impressed with Ms. Gorrell, and for good reason. Her testimony and her attitude from the birth of the child forward do not cast her in a favorable light. The trial court used her conduct as a basis for refusing upward deviation in child support. The trial court found:

-13-

The parties have had a contentious relationship for years, and it is clear that the animosity they share has made their dealings with each other considerably more difficult. The court finds that the father, Mr. Harris, has not exercised visitation with the minor child. However, this lack of visitation has been precipitated by the actions of the mother, Ms. Gorrell, in that she has threatened the father and otherwise harassed and antagonized him through various means, including contact with his employment which appears to be for the purpose of embarrassing and humiliating Mr. Harris.

While the Petitioner has sought an upward deviation from the child support guidelines due to a lack of visitation, the court finds that the petitioner has directly contributed to the lack of visitation by her conduct toward the Respondent. The petitioner has threatened, harassed, and intimidated the Respondent by threatening to make accusations about him which would tarnish his reputation, even if unfounded. As a result, the court in its discretion finds that it would be unjust to order an upward deviation.

These findings are clearly borne out by the record. Typical of her behavior is an action immediately after August 3, 2001. She forwarded a copy of a health care dependent audit from her current husband's insurance policy to Harris and to his attorney with a handwritten notation: "Attention Tyree Harris and Bill Willis: I am so tired of messing with this insurance. As a deadbeat dad please handle your part!!"

All this communication establishes is Ms. Gorrell's abysmal ignorance about deadbeat dads. Mr. Harris has complied with his contractual obligations under what was, after all, a bilateral contract entered into by both Gorrell and Harris with the benefit of counsel. Harris has been guilty of no bad faith and has acted honorably and faithfully in his monetary obligations to his child. While *Berryhill* and its progeny were perhaps foreordained by the mandatory language of the child support guidelines, the attorneys acting for both of these parties in July of 1997 did not have the benefit of *Berryhill*, and it serves no useful purpose to second guess either the parties or their attorneys from the lofty level of pure hindsight.

All this being said, the mandatory character of the guidelines relative to upward deviation because of lack of visitation cannot be ignored, at least as to prospective support. We do not choose to disturb the trial court's refusal of upward deviation retroactively, but prospectively, the guidelines must be applied. The trial court, on remand, will calculate and impose an upward deviation for lack of visitation. Harris has a right to establish a relationship with his child if he desires to do so, and further interference by Gorrell with any efforts he might make to establish such a relationship will remain subject to the supervisory powers of the trial court.

VI.    Attorney fees

The proof establishes that Ms. Gorrell is a part-time licensed practical nurse and can ill afford the reasonable attorney fees she has incurred in this proceeding. It must be remembered that the

purpose of such awards is to protect the child's rights, not those of the custodial parent. *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn.Ct.App. 1992). However poorly this record reflects upon Ms. Gorrell, she is, after all, enforcing the rights of the child of the parties under the Tennessee Child Support Guidelines and has been successful in her efforts. She is entitled to reasonable attorney fees both in the trial court and on appeal, with such fees to be determined by the trial court on remand.

VII.    Conclusion

The results of this case may seem harsh when applied to a father of a child born out of wedlock who has acted in good faith at all times and has fulfilled his obligations under a private child support Agreement entered into at arms length with the mother when both parties were represented by competent counsel. However, the public policy exposed in *Berryhill* cannot be compromised by the good faith of the parents. The Tennessee Child Support Guidelines are mandatory, and the rights of the child thereunder cannot be compromised because of the acrimony existing between the parents, even when such has been precipitated, as in this case, in large measure by the custodial parent.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings in conformity with this opinion.

Costs of the cause are assessed to Appellee.

_____
WILLIAM B. CAIN, JUDGE